# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LEE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
July 7, 2015

No. 316314
Wayne Circuit Court
LC No. 12-010789-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LEE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED

No. 316983
Wayne Circuit Court
LC No. 12-010595-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LEE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED

No. 320014
Wayne Circuit Court
LC No. 13-001600-01-FC

---

Before: M. J. KELLY, P.J., and WILDER and K. F. KELLY, JJ.

PER CURIAM.

In Docket Number 316314, defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-1), MCL 750.520b, and assault with a dangerous

-1-

weapon (felonious assault), MCL 750.82. The trial court imposed consecutive sentences of 25 to 50 years for the CSC-1 conviction and 30 to 48 months for the felonious assault conviction.

In Docket Number 316983, defendant appeals as of right his jury trial conviction of felonious assault. The trial court sentenced him to time served for that conviction.

In Docket Number 320014, defendant appeals as of right his jury trial convictions of kidnapping, MCL 750.349, and two counts of CSC-1. Defendant was sentenced to 15 to 30 years in prison for each count, and the trial court ordered him to serve the sentence for one count of CSC-1 consecutive to the sentence for kidnapping. We affirm, in part, and vacate and remand, in part.

I

A. Docket Number 320014

Defendant's convictions in Docket Number 320014 arise out of the kidnapping and sexual assault of 18-year-old LG during the early morning hours of July 1, 2012, in Detroit. LG testified that she was walking outside by herself when she observed a white, two-door car approaching from behind; its headlights were off. LG dropped her book bag and prepared to walk faster, but the car's passenger, who LG did not know, but later identified as defendant, exited and grabbed her, covering her mouth so she could not scream and stating, "Yeah, b****, I got you now." LG recalled that defendant forced her into the backseat and grabbed her book bag, and then the driver drove off with defendant in the front passenger seat.

LG further testified that, when the driver arrived at an area secluded among trees and abandoned houses nearby, he stopped, defendant climbed over his seat to reach her in the backseat, put his hand around her neck—holding her "down a little bit"—told her to take off her shorts, and commented that she had no underwear on; then he demanded that she suck on his penis and put it in her mouth. LG recalled that, afterward, defendant took his penis out of her mouth and put it in her vagina, ejaculated, expressed his sexual satisfaction, and announced he was taking a break. LG testified that, after some time passed, defendant inserted his penis into her vagina again and ejaculated a second time.

The driver subsequently took defendant and LG to another secluded area, where defendant ordered LG to exit the vehicle and gave her book bag back. The men left and LG realized her cellular phone was no longer in the book bag. She testified that she borrowed a phone to call her mother and the police. When she was taken to the hospital, a sexual assault nurse examiner (SANE) took swabs of her mouth, breasts, vagina, the labia minora, and labia majora. Although LG did not report anal penetration to the SANE, the SANE testified that anal swabs were nevertheless taken as well because, as a result of gravity, fluids or liquids can seep down into the anal sphincter area. By a DNA analyst's calculations, a minor donor of alpha amylase (a saliva enzyme) found on LG's breasts resembled defendant's DNA with a frequency of 1 in 11.73 trillion African Americans. The DNA analyst further testified that the minor donor of sperm cells found on the vaginal swab resembled defendant's DNA with a frequency of 1 in 132.8 billion African Americans. Finally, the DNA analyst testified that the minor donor of

sperm cells found on an anal slide resembled defendant's DNA with a frequency of 1 in 104.7 septillion African Americans.

Defendant was charged with: (1) kidnapping, (2) CSC-1 (fellatio), and (3) CSC-1 (penis in genital opening). The jury convicted him as charged.

## B. Docket Number 316983

Defendant's conviction in Docket Number 320014 arises out of the assault of DM in the early morning hours of July 11, 2012, in Detroit. DM had been in her home watching television with her siblings and a cousin, and talking on the phone to her boyfriend, but went outside to get some fresh air around 12:30 a.m. DM did not see anyone outside, but noticed a white, two-door car across the street. DM testified that defendant, who was a stranger to her at the time, exited the driver side of the car and walked across the street toward her neighbor's house. He was wearing jeans with paint on them. DM recalled that, as she turned and walked toward her house, defendant grabbed her hair from the back and pulled her toward the car; he held a box cutter against DM's neck and pushed her into the front passenger seat of the car, threatening to "stab" her face if she yelled.

DM testified that, after defendant started to drive, he "snatched [her] down" and forced her to perform oral sex on his penis with her mouth. She recalled that he pulled off her dress at that time, and at some point, he parked the car on Capital. DM testified that defendant was not wearing a condom and he ejaculated, some of which she swallowed and some she spit onto her hand. Next, defendant drove to Pearson and told DM to go to the backseat. As she crawled through the two front seats, he pushed on her buttocks. DM testified that, defendant exited the car, smoked a cigarette, and also appeared to be drinking Vodka; he reentered the car, climbed into the backseat, and had sexual intercourse with DM by pushing his penis into her vagina. DM recalled that defendant also pulled her bra above her breasts and touched one with his hand and covered the other with his mouth. DM testified that defendant ejaculated, retrieved a towel from the floor of the car, and used it to clean himself and the car.

DM testified that defendant allowed her to dress and drove her back to her neighborhood, dropping her off about eight to ten houses away from her home; although he returned her phone, the battery had been removed. DM subsequently went to the hospital and a buccal swab, vaginal swabs, and a swab of her right hand were retained for DNA analysis. A DNA analyst testified that the minor donor of the DNA found on the vaginal swab was very low and defendant's DNA could not be included or excluded as a match. But she concluded that the major DNA types from the sperm fraction of the sample collected from DM's right hand resembled defendant's DNA with a frequency of 1 in 4.7 septillion people.

Defendant was charged with: (1) CSC-1 (fellatio), (2) CSC-1 (penis in genital opening), (3) kidnapping, (4) CSC-2 (commission of kidnapping), and (5) felonious assault. The prosecutor filed a notice of intent to introduce other-acts evidence under MRE 404(b),

specifically the testimony of DB[1] and LG,[2] to demonstrate defendant's common scheme or plan and his intent when kidnapping DM. Defense counsel stated on the record that he did not object and the trial court allowed their testimony.

The defense presented at trial was that all three women consented to sexual penetration by defendant. Defense counsel elicited testimony that DM had a MocoSpace account, but she testified that she only spoke with women on it and did not chat with defendant or promise to have sex with him on that website. DM admitted that she closed her MocoSpace account sometime after testifying at defendant's district court proceeding, but she denied that she closed it so her messages could not be retrieved. The jury found defendant not guilty of all counts except felonious assault.

### C. Docket No. 316314

Defendant's convictions in Docket Number 316314 arise out of the assault of MM on August 13, 2012, in Detroit. While she was using a chat room on MocoSpace.com, defendant (a stranger to MM at the time) asked her if she wanted to make "a little extra money." In a private message, he suggested paying her for "conversation or pleasure." Even though she knew defendant likely wanted sex for money, she ultimately agreed because she needed extra money to care for her newborn daughter.

MM was afraid to go alone to Mobil gas station, where she had agreed to meet defendant, so she brought a friend, MH. While they waited for defendant, he called and stated that he had changed his mind. MM testified that, as she prepared to drive away, however, defendant called again and said, "as long as it will be just us two, you can get in my car then"; she agreed on the condition that MH could follow in her car. MH testified that, although he planned to follow, as he was moving from the passenger seat to the driver seat, defendant drove away quickly and he could not follow.

MM testified that defendant took her to an unfamiliar residential area with abandoned houses; when he parked the car, he asked MM what she wanted to do and she replied that she

---

[1] DB testified that defendant grabbed her as she walked in the dark, placed what felt like a gun to her temple, and forced her into a white, two-door car, and took her to several places, where he parked and demanded that she perform oral sex on him; at his third stop, after he smoked a cigarette or drank something, DB performed oral sex again and, just before defendant ejaculated he threatened her and demanded that she swallow his semen. DB testified that defendant smoked or drank something, and then had sexual intercourse with her by inserting his penis into her vagina without a condom and ejaculating. Although she had urged defendant to stop, he refused, and ultimately he drove her to a dark street, pushed her out of the car, and threw her clothes and purse out of the window to her before driving away; defendant kept her phone. DB testified at trial that she never used MocoSpace, but she had participated in a dating chatline on her phone, texting with 10 to 20 people in the three days before the incident. She denied arranging to have sex with anyone for money.

[2] LG's testimony was substantially similar to her testimony at trial in Docket Number 320014.

was not sure. MM further testified that, although defendant had showed her $150 that they had agreed would be payment for her services, he did not give it to her. Defendant took a drink of liquor and lit a cigarette.

MM testified that defendant then unzipped his pants, but by that time, she had changed her mind and wanted to go; defendant replied that she "wasn't going anywhere." MM testified that defendant then grabbed the back of her neck with his hand and forced her mouth onto his penis. MM explained at trial that she did not scream, but she told defendant that she "didn't want to."

MM recalled that after she repeatedly asked to go home, defendant told her that he was not finished yet and instructed her to get in the backseat of the car; meanwhile defendant retrieved a gun from his left side and put it on the dashboard. MM testified that defendant told her to take her clothes off; she removed her shirt and then defendant forcefully pulled off her pants and underwear. MM explained at trial, "He ripped my underwear off."[3] MM testified that defendant had her turn over, positioning her on "all fours," and he inserted his penis into her vagina; after a few minutes, defendant ejaculated and stopped.

MM testified that defendant moved to the front seat and drove them back to a place nearby the gas station where they had met. MM testified that, although defendant threw her clothes to the backseat so she could dress, he pointed the gun at her, stated she was not going anywhere, threw her cellular phone, shoes, and glasses out the window, and started to drive away. MM testified that she pushed the passenger seat forward, grabbed the passenger door handle, jumped out of the moving car, and ran in her socks toward her car, which MH had parked near the gas station.

MM was treated at a hospital and swabs from her body were retained for DNA analysis. A DNA analyst testified that a donor of sperm cells found on the vaginal cervical swabs matched defendant's DNA with a frequency of 1 in 422.1 trillion African Americans.

Defendant was charged with: (1) CSC-3 (fellatio; force or coercion), (2) CSC-1 (penis in genital opening; possession of a weapon), and (3) felonious assault. The prosecutor filed a notice of intent to introduce other-acts evidence under MRE 404(b), specifically the testimony of MT[4] and BW,[5] to demonstrate defendant's common scheme or plan and his intent when

_____

[3] Defense counsel elicited testimony that, at the preliminary examination, when he asked her if any of her clothes were ripped, she said they were not.

[4] MT testified that she met defendant on a social media app on her phone (Megamates) and had been interested in dating him. After two weeks of communication by phone, defendant picked her up in his white, two-door car with another, younger man in the backseat, and defendant promised to get her hair done for her birthday. During their ride, defendant stated that he had a girlfriend, which MT did not know, so she asked to go home. MT testified that defendant went "crazy" and grabbed her by the neck. MT recalled that the younger man helped defendant move MT to the backseat, the men switched places, and defendant held his hands around her neck until she undressed. MT further recalled that the younger man put the clothes in the truck; meanwhile,

-5-

kidnapping Morris. Defense counsel stated on the record that he did not object and the trial court allowed their testimony.

The defense presented at trial once again was that all three women consented to sexual penetration by defendant. The jury found defendant not guilty of CSC-3, but guilty of CSC-1 and felonious assault.

II

A. Docket Number 320014

1

In Docket Number 320014, defendant first argues that the trial court violated his constitutional right to Due Process, US Const, Am XIV; Const 1963, art 1, § 17, by allowing jurors to ask questions of witnesses during the trial. Because defendant did not object to this practice at trial, defendant's argument is unpreserved and reviewed for plain error affecting his substantial rights. *People v Gaines*, 306 Mich App 289, 297; 856 NW2d 222 (2014).

MCR 2.513(I) provides:

> The court may permit the jurors to ask questions of witnesses. If the court permits jurors to ask questions, it must employ a procedure that ensures that such questions are addressed to the witnesses by the court itself, that inappropriate questions are not asked, and that the parties have an opportunity outside the hearing of the jury to object to the questions. The court shall inform the jurors of the procedures to be followed for submitting questions to witnesses.

In *People v Heard*, 388 Mich 182, 187-188; 200 NW2d 73 (1972), our Supreme Court also held that trial courts, in their discretion, may allow jurors to ask questions of witnesses. Regardless of

_____

defendant held scissors to MT's neck and forced her to put her mouth on his penis. MT testified that, later, he also threatened her with scissors as he put his penis in her vagina. Ultimately, the men took MT back to her neighborhood and returned her clothes and cellular phone when she got out of the car. She did not promptly report this assault to the police because she initially planned to try to "get somebody to hurt him."
[5] BW, who used MocoSpace for prostitution, testified that she met defendant on the website and planned to have oral sex and sexual intercourse in exchange for $200. She began consensual oral sex in his white, two-door car, but then defendant became angry because she used a condom. BW testified that defendant pointed an object, which felt like a gun, at the back of her head. She recalled that she was scared as he held the back of her neck tightly to shove her head down. BW testified, at that point, she no longer wanted to have oral sex with defendant. When defendant told her to get in the backseat, she was afraid he would kill her. She exited the car and grabbed a box cutter from the floor of the passenger seat and swung it at him until she could retrieve her purse, which defendant had thrown in the backseat.

defendant's arguments for reform, we are bound to follow this decision by the doctrine of stare decisis and conclude that a trial court may allow jurors to ask questions of witnesses during a trial. *Trademark Properties v Fed Nat'l Mtg Ass'n*, ___ Mich App ___; ___ NW2d ___ (2014).

Defendant argues that the questions demonstrated that the "jury was actively involved in seeking out facts, filling in any perceived gaps in the prosecutor's proofs, and deliberating before the conclusion of the case." But in *Heard*, our Supreme Court explained that the purpose of allowing jurors to ask questions is to "help unravel otherwise confusing testimony" and to "aid the fact-finding process." 388 Mich at 187-188. In addition, the trial court instructed the jury that it could not discuss the case until the trial court sent it to the jury room for that purpose. Jurors are presumed to follow their instructions. *People v Powell*, 303 Mich App 271, 274; 842 NW2d 538 (2013). Defendant has not offered any evidence that the jury began deliberating in this case before the close of the trial and has thus failed to show plain error affecting his substantial rights regarding the juror questions.

2

Next, defendant argues that the trial court erred by instructing the jury on a manner of sexual penetration for CSC-1 that had not been charged. Specifically, defendant was charged with two counts of CSC-1 on the basis of fellatio and penis to vagina penetration. But the trial court instructed the jury that the charge could be established with evidence of penetration by defendant's penis in LG's anus:

> The defendant is charged with two counts of the crime of first-degree criminal sexual conduct, Counts 2 and 3. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant engaged in a sexual act that involved entry into LG's genital opening by the defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated and/or entry into LG's anal opening by the defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated, and/or entry into LG's mouth by the defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.

After the trial court instructed the jury, it asked if there were "any objections or corrections to the jury instructions as read to the jury," and defense counsel responded, "No, your Honor."

"Counsel's affirmative expression of satisfaction with the trial court's jury instruction waived any error." *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009). As our Supreme Court has held, when defense counsel states, "I have no objections," that is an "express and unequivocal indication [ ] that [defense counsel] approved of the instructions" and waived any error. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). Accordingly, defendant's challenge to the trial court's instruction is waived.

Defendant also maintains that defense counsel was ineffective because he failed to object to the jury instruction regarding the manner of penetration. We disagree. Because no *Ginther* hearing was held, *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973), review is limited to errors apparent on the record. *People v Jordan*, 275 Mich App 659, 668; 739 NW2d 706 (2007).

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." [*Gaines*, 306 Mich App at 300 (citation and quotation marks omitted).]

The result would not have been different if defense counsel had objected to the instruction. LG did not testify that defendant penetrated her anus with his penis. Rather, she testified that he put his penis in her mouth and then penetrated her vagina twice. Her testimony about these three penetrations, alone, was sufficient to support defendant's two convictions for CSC-1 on the basis of fellatio and penis to vagina penetration. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976) ("A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict."). The presence of DNA resembling defendant's DNA on the vaginal swab further evidenced penis to vagina penetration. Contrary to defendant's argument on appeal, the fact that sperm cells found on the anal slide also resembled defendant's DNA does not create a reasonable probability that the jury convicted defendant of CSC-1 on the basis of anal penetration. Again, LG did not testify regarding any anal penetration and she told the SANE there was none. Further, the anal swab was only taken because, when there is vaginal penetration, fluids can seep down into the anal sphincter area. Moreover, timely objection by defense counsel would have prompted the trial court to give the correct jury instruction regarding penile-vaginal penetration. Therefore, defendant cannot establish prejudice from defense counsel's failure to object to the jury instruction regarding the manner of penetration. *Gaines*, 306 Mich App at 300.

3

Defendant argues that the trial court impermissibly enhanced his sentence based on facts not found by the jury when it scored various offense variables. Defendant contends this was in violation of *Alleyne v United States*, ___ US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013). However, as defendant concedes, this Court has previously rejected this argument.

According to *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and its progeny, *United States v Booker*, 543 US 220, 244; 125 S Ct 738; 160 L Ed 2d 621 (2005); *Blakely v Washington*, 542 US 296, 311-313; 124 S Ct 2531; 159 L Ed 2d 403 (2004), any fact that increases a defendant's maximum penalty at sentencing must be admitted by a defendant or proven to a jury beyond a reasonable doubt. The United States Supreme Court recently extended this rule to mandatory minimum sentences in *Alleyne*. In that case, the Court found that "any fact that increases the mandatory minimum is an 'element' that must be

submitted to the jury." *Id*. But, the Court indicated that its *Alleyne* decision did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id*. at 2163.

In *People v Herron*, 303 Mich App 392, 403-404; 845 NW2d 533 (2013), this Court declined to apply *Alleyne* to Michigan's indeterminate sentencing scheme. This Court explained that a recommended guidelines range used to establish a minimum sentence in Michigan differs from a mandatory minimum sentence as discussed in *Alleyne*. *Id*. Thus, Michigan's scheme falls within the broad discretion traditionally afforded to trial courts "to establish a minimum sentence within a range authorized by law as determined by a jury verdict or a defendant's plea" as opposed to judicial fact-finding used to increase a mandatory minimum floor. *Id*. at 405. Thus, defendant's argument has been foreclosed by *Herron*.[6]

4

Last, in his Standard 4 brief, defendant argues that defense counsel was ineffective for obtaining consent from defendant's mother for the police to search defendant's cellular phone and then allowing that search. Defendant's argument is dependent upon facts outside the record for which defendant has failed to provide supporting proof. Because defendant has not established the factual predicate for his argument, it cannot succeed. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

B. Docket Number 316983

1

In Docket Number 316983, defendant first claims that his constitutional rights to due process were violated by the admission of other-acts evidence, specifically the testimony of DB and LG. But defendant waived any challenge to the admission of this evidence on appeal when defense counsel expressly stated on the record that he had no objection to the prosecutor's decision to call MRE 404(b) witnesses. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130, 138 (1999) (defining waiver as an " 'intentional relinquishment or abandonment of a known right.' ") (citation omitted).

---

[6] An appeal in *Herron* was held in abeyance pending the Michigan Supreme Court's decision in *People v Lockridge*, 496 Mich 852; 846 NW2d 925 (2014). See *People v Herron*, ___ Mich ___; 846 NW2d 924 (2014). However, "[t]he filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C).

In a related claim, defendant argues that defense counsel was ineffective for failing to object to the other-acts evidence. Defendant preserved his ineffective assistance of counsel claim for review when he moved this Court to remand this case for an evidentiary hearing; however, because defendant's motion was denied,[7] our review is limited to mistakes apparent on the record. *Jordan*, 275 Mich App at 667.

Defendant claims the jury only convicted him of felonious assault because it heard the other-acts evidence and did not want to set a "serial rapist" free. But his defense at trial was that all three women agreed to have sex and falsely accused him of kidnapping and rape when he refused to pay them, and the jury acquitted defendant of the kidnapping and CSC charges. Regardless, defendant cannot establish that he would also have been acquitted of felonious assault but for defense counsel's decision not to object to the other-acts evidence. DM testified that defendant held a box cutter to her neck and threatened to "stab" her if she screamed for help; she was so afraid that she remained quiet. In addition, a reasonable trier of fact could conclude that defendant demonstrated consciousness of guilt and attempted to prevent DM from seeking help by removing her cellular phone battery from her phone. A cellular phone battery and box cutters were recovered during a search of his home. In light of these facts, defendant has failed to establish prejudice and we therefore conclude that he was not denied the effective assistance of counsel as a result of defense counsel's decision not to object to the other-acts evidence.

3

In his Standard 4 brief, defendant also argues that defense counsel was ineffective for advising him not to testify on the basis that he had a prior conviction for a crime of theft or dishonesty, which could lead to impeachment by the prosecutor. Defendant's argument is dependent upon facts outside the record for which defendant has failed to provide supporting proof. Because defendant has not established the factual predicate for his argument, it cannot succeed. *Hoag*, 460 Mich at 6.

C. Docket Number 316314

1

In Docket Number 316314, defendant again claims that his constitutional rights to due process were violated by the admission of other-acts evidence, specifically the testimony of MT and BW. But defendant waived this challenge on appeal when defense counsel expressly stated on the record that he had no objection to the prosecutor's decision to call MRE 404(b) witnesses. *Carines*, 460 Mich at 763.

---

[7] *People v Johnson,* unpublished order of the Court of Appeals, entered July 8, 2014 (Docket No. 316983).

2

Defendant also argues that defense counsel was ineffective for failing to object to the other-acts evidence. Defendant preserved his ineffective assistance of counsel claim for review when he moved this Court to remand this case for an evidentiary hearing; however, because defendant's motion was denied,[8] our review is limited to mistakes apparent on the record. *Jordan*, 275 Mich App at 667.

Defendant again claims the jury only convicted him of CSC-1 and felonious assault because it heard the other-acts evidence and did not want to set a "serial rapist" free, so it compromised by acquitting him of CSC-3. But defendant cannot establish that he would also have been acquitted of CSC-1 and felonious assault but for defense counsel's decision not to object to the other-acts evidence. MM and MH testified that MM agreed to go in defendant's car if MH could follow in her car behind them, but defendant sped away quickly—preventing MH from following—and took MM to a neighborhood of abandoned houses; a reasonable trier of fact could infer that, through his actions, defendant isolated MM and made her vulnerable to victimization. Furthermore, MM testified that, with a gun resting on the dashboard, defendant forcefully removed her clothes, positioned her on "all fours," and he inserted his penis into her vagina. On the basis of MM's testimony, alone, a reasonable trier of fact could conclude that defendant engaged in sexual penetration while armed with a gun. *Davis*, 241 Mich App at 700; *Newby*, 66 Mich App at 405. Moreover, MM testified that defendant pointed a gun at her when she attempted to exit his car, thereby allowing the jury to conclude that defendant committed felonious assault. In light of these facts, defendant has failed to establish prejudice and we again conclude that he was not denied the effective assistance of counsel as a result of defense counsel's decision not to object to the other-acts evidence.

3

Next, defendant argues that the trial court erred by instructing the jury regarding the consideration of prior inconsistent statements. Specifically, prior inconsistent statements made under oath and subject to the penalty of perjury are not hearsay, MRE 801(d)(1)(A), and thus properly can be used as substantive evidence. See *People v Malone*, 445 Mich 369, 378; 518 NW2d 418 (1994) (statements that are not hearsay under MRE 801(d)(1) may be used as substantive evidence). Defense counsel elicited testimony from MMorris that she testified at the preliminary examination that none of her clothes were ripped by defendant, but at trial, she testified that defendant ripped her underwear off. On appeal, defendant claims that CJI2d 4.5(2) was applicable to these prior statements. CJI2d 4.5(2) provides:

> (2) Evidence has been offered that one or more witnesses in this case previously made statements inconsistent with their testimony at this trial. You may consider such earlier statements in deciding whether the testimony at this trial was truthful *and* in determining the facts of the case. [Emphasis added.]

---

[8] *People v Johnson*, unpublished order of the Court of Appeals, entered July 31, 2014 (Docket No. 316314).

And defendant claims that the trial court's different reading of the instruction was erroneous because it did not allow for use of MM's statement as substantive evidence:

> Evidence has been offered that one or more witnesses in this case previously made statements inconsistent with the testimony at this trial. You may consider such earlier statements in deciding whether the testimony at this trial was truthful *in* determining the facts of the case. [Emphasis added.]

But after the trial court instructed the jury, it asked if the parties had any objections, and defense counsel responded, "No, your Honor." "Counsel's affirmative expression of satisfaction with the trial court's jury instruction waived any error." *Chapo*, 283 Mich App at 372-373.

Defendant also argues that defense counsel was ineffective by failing to object to the instruction as read. But, again, defendant cannot establish that, but for the trial court's instruction, the outcome would have been different. Defendant only argues on appeal that consideration of MM's statements about whether her clothing was ripped could have affected the jury's determination regarding whether MM was credible when testifying that she saw defendant's gun on the dashboard before he sexually penetrated her vagina. But the trial court instructed the jury that any prior inconsistent statements could be used for the purpose of deciding whether the witness testified truthfully in court. Therefore, defendant has failed to establish prejudice and we conclude that he was not denied the effective assistance of counsel as a result of defense counsel's decision not to object to the trial court's reading of the instruction on prior inconsistent statements.

4

Defendant argues that the prosecutor improperly vouched for MT's credibility by stating in closing argument, "Then you have [MT]. I'm going to challenge any one of you to go back and say that that woman was not telling you the truth. If she were prostituting we would just tell you." We disagree.

To preserve a claim of prosecutor error for appellate review, a defendant must make a contemporaneous objection and request a curative instruction. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Because defendant did not object and request a curative instruction when the prosecutor allegedly vouched for MT's credibility, defendant's claim of prosecutor error is unpreserved. We review unpreserved claims of prosecutor error for plain error affecting defendant's substantial rights. *Id*.

The test for prosecutor error is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor may not vouch for the credibility of a witness by implying that he or she has some special knowledge of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). But the prosecutor is free to argue the evidence and the reasonable inferences that arise from it. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Here, the prosecutor argued, based on the facts in the record and the applicable law, that MT had no reason to lie about whether she was prostituting herself. MM and BW had both testified that they had agreed to have sex with defendant in exchange for money. The prosecutor argued that MT's situation was different

because she had been chatting with defendant and thought he was interested in having a relationship with her. The prosecutor argued that in each circumstance, however, the women ultimately did not consent to defendant's sexual penetrations and assaultive behavior. Moreover, the women were "human beings" and, regardless of their previous decisions, they "still deserve[d] respect." The prosecutor's argument did not amount to error.

Defendant also claims that defense counsel was ineffective by failing to object to the prosecutor's argument about MT's truthfulness. But because we conclude the prosecutor's argument was not improper, defense counsel was not ineffective for failing to object to it. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

5

Defendant next asserts that he is entitled to a new trial because the prosecutor commented on his demeanor in the courtroom during trial. We disagree.

During the prosecutor's examination of MT, she questioned MT regarding defendant's identity and, as defendant argues on appeal, noted that he was laughing:

> *Prosecutor*. Did he grab you with one hand or both hands?
>
> *Turner*. Both hands.
>
> *Prosecutor*. And we're talking about the man right here who's laughing; is that correct[?]
>
> *Defense counsel*. Objection, your Honor, my client is not laughing.
>
> *Prosecutor*. Yeah, he is.
>
> *Trial court*. Well leave it - -
>
> *Prosecutor*. And he's audibly laughing.
>
> *Trial court*. Yeah, I heard something too. Move on, please.

We need not determine whether a prosecutor errs as a matter of law by commenting on the demeanor of a non-testifying criminal defendant because, here, any error was harmless. An error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the opposing party. MCR 2.613(A). The trial court instructed the jurors that the prosecutor's statements and questions were not evidence and that it should only decide the case based on the evidence. The jury was presumed to follow its instructions. *Powell*, 303 Mich App at 274. Moreover, in her question, the prosecutor referenced defendant's demeanor as an identifying characteristic to ensure that the person MT described was, in fact, defendant. But this was an isolated occurrence and the prosecutor did not argue that defendant's demeanor demonstrated consciousness of guilt.

The jury was also instructed that it could not convict defendant merely because it concluded that defendant was a bad person. Because any error involving the prosecutor's description of defendant's demeanor was harmless, defendant is not entitled to a new trial.

6

Defendant further argues that his due process rights were violated when the trial court admonished defense counsel on the record, in the presence of the jury, during deliberations. We disagree.

During deliberations, the trial court responded to a question from the jury:

The other question that you sent here, which when I looked at it, you know, I was perplexed, and I'm still perplexed, it says second count: Is this any sex with gun or forced sex with gun?

This about that. Okay? Logic and common sense. What does that really mean? I'm not sure. This gun is not a sex toy. Why would somebody have a gun in the car or display a gun - -

Then, defense counsel interrupted, "Your honor - -," and the trial court stated, "Please shut up. Okay? You'll get a chance to respond to anything that I say by making an objection. Okay?" Outside the presence of the jury, defense counsel stated, "And then the other comments the Court made about common sense and sex toy was [sic] highly prejudicial and violates [sic] my client's due process [rights] to a fair trial." Although defense counsel objected to the trial court's comments about common sense and the "gun is not a sex toy," defense counsel did not object to the court's request that defense counsel "shut up." *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003) (An objection on one ground is insufficient to preserve an appellate challenge based on a different ground.). Therefore, defendant's unpreserved argument is reviewed for plain error affecting substantial rights. *Gaines*, 406 Mich App at 297.

Due process requires that all parties have an unbiased and impartial decisionmaker. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). "A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). "However, the trial court must exercise caution and restraint to ensure that its questions [and comments] are not intimidating, argumentative, prejudicial, unfair, or partial." *People v Conyers*, 194 Mich App 395, 405; 487 NW2d 787 (1992). "The test is whether the "judge's questions and comments may well have unjustifiably aroused suspicion in the mind of the jury as to a witness'[s] credibility, . . . and whether partiality quite possibly could have influenced the jury to the detriment of defendant's case." *Id.* (citation and quotation marks omitted).

Defendant only cites the trial court's isolated admonishment of defense counsel to argue that the trial court's conduct denied him a fair trial. Cf *Conyers*, 194 Mich App at 398 (judge's repeated improper and impartial comments and questions denied the defendant a fair trial). But it is a judge's duty "to control all proceedings during the trial." MCL 768.29. Here, the trial court interrupted defense counsel's objection, promising it could be done later. To the extent defendant argues the trial court's choice of words aroused suspicion in the mind of the jury, any

perceived prejudice was alleviated by the court's instructions to the jury that its comments, rulings, questions, and instructions were not evidence, and were not intended to influence the jury or express the trial court's personal opinion. Again, we presume the jury followed its instructions. *Powell*, 303 Mich App at 274. Accordingly, defendant is not entitled to a new trial on the basis of the trial court's comment.

7

Defendant argues that he is entitled to resentencing because: (1) the trial court impermissibly enhanced his sentence based on facts not found by the jury when it scored various offense variables, and (2) the trial court failed to sufficiently justify its sentences, which departed from the applicable sentencing guidelines ranges. We agree, in part.

First, as we explained earlier in this opinion, defendant's argument regarding judicial fact-finding has been foreclosed by *Herron*, 303 Mich App at 405.

Second, the trial court's determination that sentencing factors constituted substantial and compelling reasons for departure from the guidelines is reviewed for an abuse of discretion, "as is the amount of the departure." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). An abuse of discretion is present when the sentence assessed is not within the range of principled outcomes. *Id*.

"It is well established that '[a] court may depart from the appropriate sentence range . . . if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure.' " *People v Anderson*, 298 Mich App 178, 183; 825 NW2d 678 (2012), quoting MCL 769.34(3). In order to be substantial and compelling, the reasons upon which the trial court relied must be objective and verifiable. *Smith*, 482 Mich at 299. The reasons for departure must "be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention." *Id*. The trial court may not base a departure from the guidelines on an " 'offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts . . . that the characteristic has been given inadequate or disproportionate weight.' " *Id*. at 300, quoting MCL 769.34(3)(b).

When there is a departure from the guidelines range, the sentence must be proportionate to the seriousness of the defendant's conduct and criminal history. *Smith*, 482 Mich at 300. To be proportionate, the sentence must be more appropriate to the offense and the defendant than a sentence within the guidelines range would have been. *Id*. at 318. When a sentence is a departure, "the statutory guidelines require more than an articulation of reasons for a departure; they require justification for the particular departure made." *Id*. at 303. Therefore, the trial court "must justify on the record both the departure and the extent of the departure." *Id*. at 313. In *Smith*, the Supreme Court explained:

> [I]f it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial

-15-

court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been. [*Id.* at 304 (footnotes omitted).]

Regarding reference to the sentencing range grid, the *Smith* Court stated:

Certainly, a trial court that is contemplating a departure is not required to consider where a defendant's sentence falls in the sentencing range grid. However, we think that reference to the grid can be helpful, because it provides objective factual guideposts that can assist sentencing courts in ensuring that the " 'offenders with similar offense and offender characteristics receive substantially similar sentences.'" [*Smith*, 482 Mich at 309 (footnotes omitted).]

Here, the minimum sentencing guidelines range for the CSC-1 conviction was 117 to 225 months. The trial court departed from that range by sentencing defendant to 25 to 50 years for the CSC-1 conviction. Because the trial court ordered defendant's sentences to be served consecutively, the felonious assault conviction was also scored and the minimum sentencing guidelines range for that conviction was 0 to 17 months. The trial court departed from that range by sentencing defendant to 30 to 48 months for the felonious assault conviction.

On appeal, defendant does not challenge the trial court's reasons for departure, but instead argues that the trial court failed to justify the extent of each departure. In response, the prosecution contends that the trial court provided the requisite substantial and compelling reasons for exceeding the guidelines range, and that the trial court was not required to score the sentencing guidelines for defendant's felonious assault conviction because felonious assault is a lower crime class than CSC-1. Addressing the prosecution's second contention, we note that MCL 771.21(2) provides, "If the defendant was convicted of multiple offenses, subject to [MCL 771.14], score each offense as provided in this part." To that end, MCL 771.14(2) provides, in pertinent part:

A presentence investigation report prepared under subsection (1) shall include all of the following:

* * *

(e) For a person to be sentenced under the sentencing guidelines set forth in [MCL 777.1 *et seq.*] all of the following:

(*i*) For each conviction for which a consecutive sentence is authorized or required, the sentence grid in [MCL 777.61 *et seq.*] that contains the recommended minimum sentence range.

(*ii*) Unless otherwise provided in subparagraph (*i*), for each crime having the highest crime class, the sentence grid in [MCL 777.61 *et seq.*] that contains the recommended minimum sentence range.

(*iii*) Unless otherwise provided in subparagraph (*i*), the computation that determines the recommended minimum sentence range for the crime having the highest crime class.

In *People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014), lv den 497 Mich 905 (2014), this Court held that the effect of MCL 771.21(2) and MCL 771.14(2)(e) was that "the trial court was not required to independently score the guidelines for and sentence the defendant on each of his *concurrent* convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification." (Emphasis added). However, as clear from the plain language of MCL 771.14(2)(e)(*i*), each consecutive sentence imposed must be individually scored. Because the trial court sentenced defendant to consecutive terms of imprisonment for his CSC-1 and felonious assault convictions, each must have been independently scored, and the prosecution's contention regarding the applicability of MCL 771.14(2)(e)(*ii*)-(*iii*) is without merit.

Addressing defendant's argument, we agree that the trial court gave no explanation for the particular departures and the trial court failed to justify why the sentences imposed are more proportionate than sentences within the guidelines recommendation would have been. We therefore vacate defendant's sentences in Docket Number 316314 and remand for resentencing. On remand, the trial court must sentence defendant within any applicable sentencing guidelines ranges for both his CSC-1 and felonious assault convictions, or articulate on the record a substantial and compelling reason for departure and justify the extent of the departure, in accordance with *Smith*, 482 Mich at 309.[9]

8

In his Standard 4 brief, defendant again argues that defense counsel was ineffective for advising him not to testify on the basis that he had a prior conviction for a crime of theft or dishonesty, which could lead to impeachment by the prosecutor. Defendant's argument is dependent upon facts outside the record for which defendant has failed to provide supporting proof. Because defendant has not established the factual predicate for his argument, it cannot succeed. *Hoag*, 460 Mich at 6.

---

[9] Because we vacate defendant's sentence in Docket No. 316314, we decline to address defendant's argument whether the trial court committed plain error affecting defendant's substantial rights by imposing $600 in court costs. Any imposition of costs on remand, however, should be made in accordance with MCL 769.1k, as amended by 2014 PA 352, *People v Konopka*, ___ Mich App ___; ___ NW2d ___ (Docket Number 319913; March 3, 2015), and *People v Cunningham*, 496 Mich 145, 159; 852 NW2d 118 (2014).

III

We affirm defendant's convictions, but vacate his sentence in Docket No. 316314 and remand for further proceedings in that case, consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kurtis T. Wilder
/s/ Kirsten Frank Kelly