## PEOPLE *v.* KNAPP

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESS — DEFENSE WITNESS — IMPEACHMENT.

   The people may impeach the credibility of a *res gestae* witness who is also a key witness for the defense (MCLA § 767.40[a]).

2. CRIMINAL LAW—WITNESSES—IMPEACHMENT—JUVENILE RECORD.

   A witness, not the defendant, may be impeached by asking whether he had been in trouble with the juvenile authorities (MCLA § 712A.23).

3. CRIMINAL LAW—WITNESSES—IMPEACHMENT—PRIOR ARRESTS.

   A witness, unlike a defendant, may have his credibility impeached by questioning him regarding arrests or charges which did not result in convictions.

4. CRIMINAL LAW—WITNESSES—IMPEACHMENT—JUVENILE RECORD—PRIOR ARREST.

   Prosecutor's asking a witness, not the defendant, whether he had been arrested as a juvenile for breaking and entering was not reversible error where the question was withdrawn before an answer was given and the trial judge instructed the jury to disregard the question (MCLA § 712A.23).

5. CRIMINAL LAW — FELONIOUS ASSAULT — DANGEROUS WEAPON — BROOMSTICK.

   A broomstick was properly determined to be a dangerous weapon within the provisions of the statute proscribing felonious assault where the broomstick was thrown at about head level and, thus, could have been expected to cause an injury to the head, neck, or chest, an injury which could result in great bodily harm or even death (MCLA § 750.82).

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Witnesses § 680.
[2]  58 Am Jur, Witnesses § 736.
[3]  58 Am Jur, Witnesses § 754.
[4]  5 Am Jur 2d, Appeal and Error § 778.
[5]  56 Am Jur, Weapons § 3.

Appeal from Kent, George W. Boucher, J. Submitted Division 3 March 31, 1971, at Grand Rapids. (Docket No. 9504.) Decided June 22, 1971.

James Gilbert Knapp was convicted of felonious assault. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston III,* Chief Appellate Attorney, for the people.

*Dirk Hoffius,* for defendant on appeal.

Before: HOLBROOK, P. J., and BRONSON and O'HARA,* JJ.

HOLBROOK, P. J. The defendant, James G. Knapp, was convicted in a circuit court jury trial of felonious assault,[1] held March 11 and 12, 1969. The events which lead to defendant's conviction occurred on December 6, 1969. They involved two groups of youths and two confrontations between these two groups. The first group was composed of Jack Everett, Bob Grover, Bill Grover, Jim Grover, Steve Grover, Dan Shimshack, and Jeff Pierce. They were guests of Frank and Nancy Grover who lived in the upstairs apartment at 901 Butterworth, Grand Rapids, where the confrontations took place. At about 9 p.m., Jack Everett, with Bob and Bill Grover, left the apartment for the purpose of taking Bill Grover home. As they entered Everett's automobile, about 10 to 14 youths on the sidewalk started to call them names. One of them hit Bill Grover in

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6 § 23 as amended in 1968.

1 MCLA § 750.82 (Stat Ann 1962 Rev § 28.277).

the back. Help was summoned of those remaining upstairs and four of the group came to help. The other youths ran away. The members of the first group returned upstairs and shortly, some of the group that had run away came back and one had a gun. The police were called by one of the Grovers. When the police arrived, they questioned all present at the Grovers and others in the neighborhood and then left. At about midnight there was a noise at the door leading into the apartment, and some of the group went to the door and saw a boy running down the stairs. There was further commotion on the porch and Jack Everett together with Jeff Pierce, Bill Grover, and Steve Grover, went downstairs. Frank Grover started to leave and then returned to call the police. The outside door had been opened and there were youths outside cursing and telling those inside to come out. These youths were not invited guests of the Grovers. They were the second group and included James G. Knapp, the defendant, Jerald Harig, Rick Bowhuis, Dan Brown, Bill Battjes, and other unnamed individuals. These youths, with the exception of Jerald Harig belonged to a club called "The Violators". The four youths who were inside the house and had come downstairs attempted to close the outside door. A member of the second group had a club and swung it at one of the members of the first group. A snow shovel was thrown from the outside at the youths in the stairway, and both Pierce and Everett ducked as it passed by them. Then a broomstick was thrown from the outside and Everett moved out of the way and it struck Pierce in the eye. Pierce fell to the floor from the blow and Steve Grover carried him upstairs. Other testimony indicated that a chair, a club, and a hammer were thrown by members of the second group into the stairway. The first group

was able to close the door, but members of the second group broke the three glass panes in the door with a hammer.

Jack Everett and Steve Grover positively identified defendant Knapp in open court as the one who threw the broomstick.

Dr. William Zimmerman, M.D., an ophthalmologist, testified that Jeff Pierce sustained severe injuries to his right eye. These injuries included lacerations on both the upper and lower eyelid; laceraations involving the lacrimal canal which is the tear duct system for drainage of tears from the eye; a fracture of one of the bones at the floor of the orbit; and edema, or swelling of the retina. Two operations, performed by four surgeons, were only partly successful. Pierce has suffered serious, permanent damage to his eye and to his eyesight.

The members of the second group who testified told a different version of the confrontations. Jerald Harig testified that around midnight he and the defendant, James Knapp, were returning from Rudy's store after purchasing some soft drinks. They cut through an alley and across the grass, and as they did, some youths began to holler at them. They in turn hollered back, and as a result, several of these youths started running down the stairs after them. They then picked up some stuff and began throwing it at Harig and Knapp. Consequently, Harig picked up some of the stuff, including the broom, and threw it back. Then he ran, and he said he didn't know whether the broom hit anyone. On cross-examination, Harig admitted that he had been in trouble with the juvenile authorities.

Dan Brown testified that at midnight he had been with Bill Battjes and had seen Jerald Harig and James Knapp. He said he had been in a yard near

901 Butterworth at the time. He and Bill had been looking for Knapp and Harig and saw them cutting through a yard while some others were shouting at them to get out of the yard. Brown then saw a broom thrown out at them and Jerald picked it up and threw it back, whereupon everyone ran.

This testimony was corroborated by Bill Battjes who had been walking with Brown at the time. Rick Bowhuis testified that the same night that these events took place, Jerald Harig admitted to throwing the broom.

Defendant raises three issues on appeal which we restate as follows:

(1) Was reversible error committed when the prosecuting attorney questioned Jerald Harig about a specific arrest after he had admitted having previously been in trouble with juvenile authorities?

(2) Was there sufficient evidence produced at the trial to support the verdict of guilty beyond a reasonable doubt that defendant James G. Knapp committed an assault with a dangerous weapon?

(3) Was the broomstick, as used, under the facts in this case, a dangerous weapon within the provisions of MCLA § 750.82 (Stat Ann 1962 Rev § 28.277)?

I

The pertinent cross-examination of Jerald Harig to which defendant claims reversible error is as follows:

"*Q.* You ever been in trouble with the juvenile authorities before?

"*A.* Yes.

"*Q.* How many times would you say you have been in trouble with the juvenile authorities?

"*Mr. Doherty* [*defense lawyer*]: I would object. I think that under the court rules that if a person

admits that he has been in trouble the prosecutor is not entitled to go into any further details .

"*The Court:* Sustained.

"*Q. (Mr. Zerial)* [*assistant prosecutor*]: I am just asking how many times—

"*Mr. Doherty:* I don't think it is relevant. If he has admitted he has been in trouble it is not relevant to how many times or what the trouble was.

"*The Court:* Objection is sustained.

"*Q. (Mr. Zerial):* About 9:15 on March 1, 1970—

"*A.* Yes.

"*Q.* Weren't you arrested for B & E.

"*Mr. Doherty:* Again, I would object. He has admitted that he has been in trouble with the juvenile authorities.

"*Mr. Zerial:* I will withdraw the question.

"*The Court:* The objection is sustained and the jury is requested to ignore the last question of the prosecutor."

Harig was a *res gestae* witness whom the people were required to call, but he was also a "key witness" for the defense when he testified it was he and not Knapp that threw the broomstick. Under the circumstances, it was permissible for the prosecutor to impeach his credibility. MCLA § 767.40a (Stat Ann 1954 Rev § 28.980[1]); *People* v. *Pope* (1967), 8 Mich App 231; *People v. Danles* (1969), 15 Mich App 510.

Our Supreme Court has ruled in the case of *People* v. *Smallwood* (1943), 306 Mich 49, that MCLA § 712A.23 (Stat Ann 1962 Rev § 27.3178[598.23]) does not render improper a question put to a witness as bearing on his credibility as to whether he had been in trouble with the juvenile authorities.

The main thrust of defendant's claim of error pertains to the question of the prosecuting attorney:

"*Q.* About 9:15 on March 1, 1970—
"*A.* Yes.
"*Q.* Weren't you arrested for B & E?"

This question was objected to by defense counsel whereupon the prosecutor withdrew the question and the trial judge sustained the objection and instructed the jury to disregard the question. To support the claim of error, defendant cites the case of *People* v. *Brocato* (1969), 17 Mich App 277. *Brocato* ruled that a defendant testifying at his own trial may not be asked if he has been arrested or charged with a crime where the arrest or charge has not resulted in a conviction and where the only purpose of the question is to impeach the defendant's credibility as a witness. However, where the issue involves a witness instead of a defendant in a criminal trial, the rule is stated in *Brocato* on p 302 as follows:

"*People* v. *MacCollough* (1937), 281 Mich 15, has been cited as authorizing inquiry as to arrests and charges of crime. But the cross-examination complained of there and allowed as being within the outer limits of the trial judge's discretion was directed not to the arrests of the defendant on trial, but to those of his witnesses. To the same effect, see *People* v. *Miniear* (1967), 8 Mich App 591, 598, which also involved not a defendant on trial but a witness called by the people."

Under the facts in the present case, where the question was withdrawn before an answer was given and the trial judge instructed the jury to disregard the question, we conclude no reversible error occurred. *People* v. *Droste* (1910), 160 Mich 66; *People* v. *Page* (1917), 198 Mich 524; *People* v. *Williams* (1922), 218 Mich 436; *People* v. *Richardson* (1927), 239 Mich 695; *People* v. *Harry Fleish* (1948), 321 Mich 443; *People* v. *Farley* (1968), 13

Mich App 132; and *People* v. *Clairmont* (1968), 13 Mich App 577.

## II

The defendant asserts that the Courts of our state have consistently said that the test upon appeal of a criminal case is whether the evidence is sufficient to convince beyond a reasonable doubt. *People* v. *Williams* (1962), 368 Mich 494; *People* v. *Schram* (1965), 1 Mich App 279; *People* v. *Galarno* (1966), 3 Mich App 491; *People* v. *Washington* (1966), 4 Mich App 453. With this statement of the law we agree. Defendant further asserts that he was wrongly identified by the two witnesses who testified that they saw defendant throw the broomstick. It is true that there was contrary testimony to the effect that Jerald Harig threw the broomstick as evidenced by Harig's testimony. However, the fact that there is conflicting testimony in cases is why we have juries to determine where the truth lies. The jury is the determiner of the facts and the credibility of the witnesses. The law is well established that the Court of Appeals is not a reviewing jury and does not hear cases anew on the evidence. *People* v. *Eagger* (1966), 4 Mich App 449; *People* v. *Bratton* (1969), 20 Mich App 523; and *People* v. *Allen* (1970), 21 Mich App 109. The jury's determination is final if there is valid evidence before them to justify their verdict. Assuming for purposes of considering this issue that the broomstick was a dangerous weapon, we conclude that there was sufficient evidence if believed to justify the finding of guilty beyond a reasonable doubt.

## III

The defendant claims that a broomstick, as used under the facts in this case, was not a dangerous

weapon within the provisions of the statute MCLA § 750.82 (Stat Ann 1962 Rev § 28.277).[2] Defendant cites the case of *People* v. *Childs* (1968), 11 Mich App 408, 411, defining the elements necessary of proof in a felonious assault case:

"The only elements necessary to be proven are assault and that a dangerous weapon had been used in making the assault. *People* v. *Burk* (1927), 238 Mich 485, 489; 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1041, pp 1435, 1436."

In 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1044, pp 1436, 1437 it is stated:

"A 'dangerous weapon' within the meaning of the statute, is any instrument reasonably calculated, and, likely, to produce death or serious bodily injury from the manner in which it is used, or, perhaps it is more accurately described as a weapon, which, in the manner in which it is used or attempted to be used, may endanger life or inflict great bodily harm."

Defendant asserts that, under the facts in the instant case, the broomstick could not have been contemplated to inflict great bodily harm. With this position we cannot agree.

In the case of *People v Ragland* (1968), 14 Mich App 425, 426, this Court, in considering whether a flashlight was a dangerous weapon, stated:

"It was for them [the jury] to determine as a question of fact whether or not the flashlight was a dangerous weapon."

The testimony indicated that the broomstick was thrown at about head level or just below, and it

---

[2] "Any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony."

could be expected that an injury to the head, neck or chest would inflict great bodily harm or possibly even death. We point out that, before the discovery of guns and gunpowder, man had had a long history of inflicting mortal wounds with but a slender shaft propelled by hand.

The jury was properly instructed as to the definition of a dangerous weapon, and under the facts in this case, was justified to determine that the broomstick as used was a dangerous weapon.

Affirmed.

All concurred.