PEOPLE v NEWBY

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEADLOCK—ALLEN CHARGE—COERCION.

An *Allen* charge may be appropriate where a jury has indicated difficulty in reaching a decision but has not clearly stated that they are hopelessly deadlocked; such a charge is not per se coercive and any claim of coercion must be determined on a case-by-case basis on appeal.

2. CRIMINAL LAW—EVIDENCE—EYEWITNESS IDENTIFICATION—EXPERT TESTIMONY—JURY.

A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to support a criminal conviction, even where there is uncontradicted expert testimony which conflicts with the complainant's identification; the weight and credibility to be accorded the testimony of witnesses is for the jury.

Appeal from Recorder's Court of Detroit, John P. O'Brien, J. Submitted October 15, 1975, at Detroit. (Docket No. 21250.) Decided January 6, 1976. Leave to appeal applied for.

Ernest Newby, Jr., was convicted of armed robbery and rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Trial §§ 1060–1062.

Instructions urging dissenting jurors in criminal case to give due consideration to opinion of majority. 100 ALR2d 227.

[2] 75 Am Jur 2d, Trial §§ 321, 334, 417, 434.

Credibility of witness giving uncontradicted testimony as matter for court or jury. 62 ALR2d 1191.

Attorney, Research, Training and Appeals, and *Robert W. Horn,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and BASHARA and R. M. MAHER, JJ.

V. J. BRENNAN, P. J. Defendant, Ernest Newby, Jr., was convicted by a jury of armed robbery and rape, in violation of MCLA 750.529; MSA 28.797 and MCLA 750.520; MSA 28.788. Defendant was sentenced to serve concurrent terms of four to ten years in the state penitentiary. Defendant appeals as of right.

The complainant was accosted when she returned to her home after grocery shopping. The felon forced her into her home at gun point. After ransacking the apartment for valuables, the robber then raped the complainant. She testified that the rapist wiped his private parts with a sweater which belonged to her husband which he had found in the home. A police chemist testified that her analysis of the stains on the sweater revealed that the semen came from a person having a different blood type than that of the defendant.

The complaining witness positively identified the defendant as the felon. On direct examination, the following testimony was adduced by the prosecutor.

"*Q.* How long would you say this man was in the flat with you?

"*A.* At least 25 minutes.

"*Q.* Did you get a good look at him?

"*A.* Yes, I did, the whole 25 minutes I looked dead in his face.

"*Q.* Why?

"*A.* Because if he left me living I was going to be able to identify him.

"*Q.* Did you make any particular effort to try to remember what he looked like?

"*A.* Yes, I did, his clothes, his face, his hair, the weight, height, I looked at it all."

Following the instructions by the judge, the jury retired to begin their deliberations at 2:20 p.m. on July 2, 1974. At 11:35 a.m., on July 3, 1974, the jury returned to the courtroom and the following colloquy took place:

"*The Court:* Good morning, Ladies and Gentlemen.

"*Jurors:* Good morning.

"*The Court:* Let the record show the jury is back and properly seated. Who is the Foreman or Forewoman?

"*Juror Klein:* Yes, I am.

"*The Court:* Is there a problem?

"*Foreman:* Well, we're having difficulty in coming to an agreement, yes, sir.

"*The Court:* I'm going to give you an additional charge to be used in this case, Ladies and Gentlemen. * * * ."

The trial judge then proceeded to give an *Allen*[1] charge to the jury, after which the jury returned to the jury room to continue its deliberations.

At approximately 2:30 p.m. the following colloquy took place:

"*The Court:* Let the record show that about 10 minutes ago I received a note from the jury, it's small, 1-1/2 by 3 inches piece of paper which says, 'Ballot No. 5, guilty 11, reasonable doubt 1.' I immediately called Mr.

---

[1] *Allen v United States*, 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

Monash and as I was talking to him I think our court clerk was calling Mr. Weiswasser then we had another knock on the door and the officer was told that they have a verdict so you fellows are apprised of the situation and I am prepared at this time to take the verdict.

*"Mr. Weiswasser:* Just for the record, was there any contact with the jury whatsoever in between the time of the receipt of the note by the court that they reached a verdict?

*"The Court:* No.

*"Mr. Weiswasser:* Thank you, your Honor.

*"The Court:* It couldn't have been more than 5 minutes, is that right, Officer Linton?

*"Officer Linton:* No, it couldn't.'"

The jury then returned and rendered its verdict, finding the defendant guilty as charged on both counts.

Defendant contends on appeal that the trial judge's delivery of the *Allen* charge in the circumstances of this case coerced a verdict and that this constituted reversible error. We disagree. Defendant argues that the *Allen* charge is appropriate only where the jury has indicated that it is hopelessly deadlocked, and thus was not properly given when the jury indicated that it was only "having difficulty". Defendant thus invites us to make a distinction between juries "having difficulty reaching a verdict", and juries which are "hopelessly deadlocked". We decline the invitation. We cannot forge hard and fast rules detailing what will, ipso facto, constitute coercion. The Michigan Supreme Court in the recent case of *People v Sullivan,* 392 Mich 324, 332; 220 NW2d 441 (1974), has spoken extensively on this subject. The Court held:

"Our decisions lead us to the conclusion an *Allen* charge is not per se coercive. Any claim of coercion must be determined on a case by case basis."

Cases cited by defendant, *United States v Contreras,* 463 F2d 773 (CA 9, 1972), *United States v Williams,* 447 F2d 894 (CA 5, 1971), and *Miller v State,* 10 Md App 157; 268 A2d 596 (1970), are inapposite since in each of these cases the trial judge gave an *Allen* charge when the jury had not even indicated that they were having difficulty in reaching a verdict. They cannot be understood to stand for the proposition that an *Allen* charge is inappropriate where a jury has indicated difficulty but has not clearly stated that they are hopelessly deadlocked. We think that to attempt such a distinction would be legal sophistry and would lead to unnecessary confusion in the law. Further, it is worthy of note that Justice, now Chief Justice T. G. Kavanagh and Justice Levin in their dissent in *People v Sullivan, supra,* express the view that an *Allen* charge is coercive if given *after* a deadlock develops and it is acceptable only if given *before* the jury retires to deliberate. Thus the circumstances under which an *Allen* charge is most likely to be coercive is much in dispute. We do not find that a meaningful distinction can be made in terms of the potential coercive effects of an *Allen* charge between a jury "having difficulty" and a jury "hopelessly deadlocked". Even assuming, *arguendo,* that the judge committed error in giving the *Allen* charge under the circumstance of the instant case, defendant did not object, so this Court will not reverse unless there is a clear abuse of discretion resulting in manifest injustice. *People v Tooks,* 55 Mich App 537, 540; 223 NW2d 63 (1974). We find no abuse of discretion resulting in a manifest injustice in this case.

Defendant next contends that his conviction was based upon insufficient evidence since a chemical analysis revealed that the defendant's blood type did not match a semen sample found at the scene

of the crime. Counsel for defendant vigorously and earnestly contends that, in the fact of the absence of any other physical evidence linking defendant to the crime, the complainant's eyewitness testimony alone is not sufficient evidence upon which to base a conviction. We disagree. A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict. See *People v Knapp,* 34 Mich App 325, 332; 191 NW2d 155 (1971). Moreover, the trier of fact is not bound to believe uncontradicted expert testimony, since the weight and credibility to be accorded the testimony of expert witnesses is for the jury. *People v Horowitz,* 37 Mich App 151, 158; 194 NW2d 375 (1971), *lv den,* 387 Mich 753 (1972). The jury in this case was presented with a perplexing conflict in the evidence. On the one hand they had the very convincing eyewitness testimony of the complainant as set out in the facts, and on the other hand, they had the testimony of the police chemist which would tend to exclude the defendant as the perpetrator of the crime. It is not our role as the reviewing court to second-guess why the jury found as it did, but the jury might well have considered the fact that the semen sample consisted of only one dead spermatazoa and that the time at which the sample was deposited could not be determined with any degree of accuracy. Weighing the evidence before it, the jury did not conclude that the scientific evidence, under these particular circumstances, was sufficient to establish a reasonable doubt of defendant's guilt in the light of the thoroughly convincing testimony of the complainant. Our system of jurisprudence requires that the weight of evidence and the credibility of a witness be left to the trier of fact. *People v Knapp, supra* at 332; 191 NW2d at 159.

Affirmed.