# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH SMITH,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 334953
Wayne Circuit Court
LC No. 16-001568-01-FC

Before: Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of one count of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f) (personal injury). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 12 to 20 years' imprisonment. We affirm.

This case arises out of the sexual assault of the victim by defendant on the evening of June 8, 2005. According to the testimony of the victim, he attended a party at a friend's house that evening near the intersection of Lahser Road and Keeler Street in Detroit, where he consumed alcohol and smoked marijuana. Around 10:00 p.m., the victim left his friend's house and began walking to a nearby bar where he expected to find a ride to his girlfriend's house. When he stopped at an intersection to search in his pockets for a lighter to light his cigarette, defendant pulled up in his vehicle, rolled down the passenger-side window, and asked if the victim had a spare cigarette. The victim responded that he would give defendant a cigarette if defendant could provide a light. Defendant agreed to the exchange, and the victim got into the vehicle where the two men continued conversing. Defendant told the victim that he was looking for a female prostitute, and the victim told defendant that he had not seen any prostitutes in the area. According to the victim, he then asked defendant if he was going in the direction of the bar that the victim was trying to reach; defendant replied that he was not going that way, and began to drive away with the victim still in the vehicle. The victim said that he needed to get out of the vehicle, and defendant drove around the block and stopped the vehicle.

As the victim began to exit the vehicle, defendant asked for a couple more cigarettes. The victim testified that he recalled pulling the cigarettes out of the pack. The next thing he remembered was waking up facedown in the passenger seat with a bump on his forehead. The seat was completely reclined, defendant was on top of him, and defendant's hand was on the

-1-

back of the victim's neck, holding him down while defendant penetrated the victim's anus. When the victim struggled, defendant repeatedly hit him on the back of the head. The victim reached the door handle and opened the passenger-side door. When the cabin light illuminated the interior of the vehicle and the door chime sounded, defendant released his grip on the victim's neck and the victim "rolled out" of the vehicle and crawled away, then stood up, pulled his pants up, and ran to some nearby bushes where he hid.

The victim then called his mother using his cell phone and asked her to pick him up and take him to the hospital because "something really horrible" had happened. According to the testimony of the victim's mother, when she picked him up the victim was crying hysterically, half sitting on the passenger's seat and half on the floor of the vehicle. The victim would not tell his mother what had happened and said it was "too awful." At the hospital, the victim asked his mother to wait in the car while he went into the emergency room. He told the security guard that he had been raped, and was taken into an examining room. Dr. Robert Matthews, a physician at the hospital, testified that a sexual assault examination was performed which resulted in DNA evidence begin obtained. The doctor noted that the victim was not able to identify his alleged assailant and that the medical records indicated that the victim was in moderate distress and was "very emotional and tearful." Although the victim complained of pain in his head, Dr. Matthews did not note any signs of physical trauma, other than rectal bleeding, which may have come from ruptured external hemorrhoids. The doctor testified that any trauma to the rectal area may have caused the hemorrhoids to rupture and bleed. The victim testified that he was so embarrassed that he did not wait for police, but instead left the hospital without being discharged, still in his hospital gown, and that his mother drove him home.

The evidence from the sexual assault examination was picked up by Detroit Police officers later that night, but due to a backlog within the Detroit Police Department the evidence was not processed until February 3, 2014. A DNA analyst at Bode Technology processed the samples and testified that foreign DNA was detected from the rectal swab. The results were thereafter analyzed by a forensic scientist with the Michigan State Police Biology Unit, who testified that the foreign DNA found on the victim's rectal swab matched defendant's profile, which already was on file in the Combined DNA Index System (CODIS). The DNA from the victim's rectal swab was again matched to defendant's DNA obtained through a search warrant.

At the conclusion of the testimony, the trial court found that, although it was unclear why the victim entered defendant's vehicle, the victim's testimony was otherwise consistent: "[t]hat there was forceful, sexual penetration of [the victim's] anal opening" and that the DNA evidence indicated "that [defendant] was involved in that." The trial court further noted that the examining physician had testified that the penetration had been forceful enough to rupture the preexisting hemorrhoids and cause bleeding, and that was sufficient to satisfy the personal injury element of the offense. Accordingly, the trial court found defendant guilty of CSC I.

## I. EXCLUSION OF EVIDENCE

On appeal, defendant first argues that the trial court committed error requiring reversal when it limited defendant's cross-examination of the victim regarding his alleged history of mental illness. Defendant asserts that this limitation was improper because the testimony was

relevant and admissible, and that the limitation denied defendant his constitutional right of confrontation. We disagree.

At trial, defendant argued that he should be permitted to question the victim about his alleged history of mental illness, arguing that it was relevant to the victim's state of mind and observations. Defendant therefore preserved this issue for review. See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). This Court reviews the trial court's exclusion of evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (citation omitted). We review de novo a trial court's ruling on a preliminary question of law regarding the admissibility of evidence, but an error by the trial court in admitting or excluding evidence is not grounds for reversal unless, "after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *King*, 297 Mich App at 472.

However, defendant did not present this argument before the trial court as a violation of his constitutional right of confrontation. Because an objection on one ground is insufficient to preserve an appellate challenge based on a different ground, that part of defendant's argument is unpreserved. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). This Court reviews unpreserved constitutional questions for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error is shown by proving that "1) [the] error must have occurred, 2) the error was plain, i.e., clear and obvious, 3) and the plain error affected substantial rights." *Id.* at 763 (citation omitted). Generally, to show that the error affected substantial rights, it must be proven "that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (citation omitted).

On appeal, defendant argues that the trial court abused its discretion by limiting defendant's cross-examination of the victim, because the victim's alleged history of mental illness was relevant to the victim's credibility. Defendant contends that the victim's testimony about his alleged history of mental illness would have supported defendant's claim that the encounter was consensual sexual experimentation.

Although a defendant has a constitutionally-guaranteed right to present a defense, the accused must nonetheless comply with established rules of evidence. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). Under MRE 401, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, inquiry into a witness's credibility and bias is relevant. *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001). However, a trial court may prohibit a party from cross-examining a witness on collateral matters bearing only on general credibility or on irrelevant issues. *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1993). Where nothing in the record indicates that the victim's mental health had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence" a trial court does not abuse its discretion in excluding the evidence. MRE 401; MRE 402.

In this case, defense counsel at trial attempted to question the victim about his mental health history as follows:

> *Q.* Okay. And were you on any medications?
>
> *Ms. Brookings* [Prosecutor]: Objection. Relevance.
>
> *Mr. Bickerdt* [Defense Counsel]: Well, Your Honor, his state of mind certainly would be relevant and—whether he's under the influence or not, his observations—
>
> *The Court*: I'll allow it.
>
> *Q.* Were you on any medications, sir?
>
> *A.* No, I wasn't.
>
> *Q.* Sir, do you have any history of mental illness?
>
> *A.* Yes, I do.
>
> *Ms. Brookings* [Prosecutor]: Objection. Relevance.
>
> *The Court*: Sustained.
>
> *A.* Yes.
>
> *The Court*: I've sustained it.
>
> *Ms. Brookings* [Prosecutor]: Thank you, Judge. I'd ask that the answer be stricken.
>
> *The Court*: So ordered.
>
> *Mr. Bickerdt* [Defense Counsel]: Well, Your Honor, I would argue that it's very relevant as to—again his state of mind and his observations and I would just ask the Court to take the testimony—but either way—
>
> *The Court*: All right.

Defendant generally argues that the victim would have testified that he had some sort of mental illness that would have made him more likely to falsely accuse defendant of sexual assault. Defendant does not speculate what this illness might be, and makes no attempt to articulate a theory of how the victim's alleged mental illness tended to show that he was more likely to falsely accuse defendant of sexual assault. Furthermore, defendant does not demonstrate that during the relevant time-frame the victim exhibited a disposition to lie or

hallucinate, or that he had an impaired ability to perceive and tell the truth. Although a history of false accusations by a victim of sexual assault is relevant in CSC cases, defendant does not argue that the victim had a history of false sexual assault accusations. See *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1985) (recognizing that the defendant is permitted to show that the victim has made untrue accusations of sexual assault before). Therefore, defendant has not shown that the evidence was relevant and therefore, admissible. Rather, nothing in the record suggests that the victim's allegations were the result of mental illness. Based on the facts of this case, we do not find that the trial court's ruling is outside the range of reasonable and principled outcomes. We conclude that the trial court did not abuse its discretion by precluding the introduction of evidence regarding the victim's alleged history of mental illness. See, e.g., *People v Oros*, 320 Mich App 146, 164-165; ___ NW2d ___ (2017).

Moreover, even when excluding evidence of a victim's mental illness is error, such an error does not require reversal unless "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." See *Carines*, 460 Mich at 763. Here, the record demonstrates that it is unlikely that the exclusion of the evidence affected the outcome of the lower court proceedings. Even with the trial court's limitation, defendant had the opportunity to adequately explore and develop the issue of the victim's ability to perceive and recall events. Therefore, defendant cannot show that it is more probable than not that the trial court's limitation affected the outcome of the trial. Accordingly, the trial court did not abuse its discretion by limiting defendant's cross-examination of the victim regarding the victim's alleged history of mental illness.

Defendant's unpreserved constitutional claim is also without merit. The Sixth Amendment of the United States Constitution recognizes a defendant's right "to be confronted with the witnesses against him." US Const, Am VI; see also Const 1963, art 1, § 20. The Confrontation Clause secures "the right of cross-examination," but "not without limit." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). "The scope of cross-examination is within the discretion of the trial court." *Canter*, 197 Mich App at 564. The trial court may curtail cross-examination "with respect to collateral matters bearing only on general credibility . . . as well as on irrelevant issues." *Id.* (citations omitted).

As discussed, defendant did not raise this constitutional challenge before the trial court and that part of defendant's argument therefore is unpreserved. *King*, 297 Mich App at 472. Moreover, defendant has not shown that this evidence was relevant, and therefore, admissible. Rather, it appears that defendant sought to introduce evidence of the victim's alleged history of mental illness to wage a general attack on his credibility. Therefore, the trial court did not commit plain error by limiting defendant's cross-examination of the victim regarding the victim's alleged history of mental illness. See *Carines*, 460 Mich at 763.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant next argues on appeal that the prosecutor presented insufficient evidence to establish that the victim suffered a "personal injury" or that defendant used force or coercion to accomplish penetration. Again, we disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016) (citation omitted). Evidence should be viewed in the light most favorable to the prosecution to determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (citation omitted).

In this case, sufficient evidence was presented for a rational trier of fact to have found defendant guilty of CSC I, pursuant to MCL 750.520b(1)(f), which states, in pertinent part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> \* \* \*
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. . . .

"Personal injury" under the statute "means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). Bodily injury, mental anguish, and the other conditions "are merely different ways of defining the single element of personal injury" and "if the evidence of any one of the listed definitions is sufficient, then the element of personal injury has been proven." *People v Asevedo*, 217 Mich App 393, 397; 551 NW2d 478 (1996). To constitute bodily injury, the physical injuries suffered "need not be permanent or substantial." *People v Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000).

With respect to bodily injury, the victim testified that he had a bump on his forehead after defendant knocked him unconscious, and that defendant "hammered" him on the back of the head during the assault. Defendant argues that his conviction rests solely on the victim's unsubstantiated testimony that defendant caused him physical injury because, although the victim sought medical treatment immediately after the sexual encounter, the medical records did not yield any evidence of physical injury or trauma. This argument, however, ignores Dr. Matthews's testimony that the victim complained of a pain in his head, and presented with rectal bleeding, which may have resulted from the trauma-induced rupture of external hemorrhoids. Moreover, the prosecutor was not required to corroborate the victim's testimony. MCL 750.520h. See also *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976).

Additionally, the evidence was sufficient to establish mental anguish. To prove mental anguish, "the prosecution is required to produce evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind." *People v Petrella*, 424 Mich 221, 259; 380 NW2d 11 (1986) (citation omitted). In determining the existence of "mental anguish," a reviewing court

may consider factors such as whether the victim was upset, crying, sobbing, or hysterical during or after the assault; the need for psychiatric or psychological care or treatment; interference with the victim's ability to conduct a normal life, such as absence from the workplace; fear for the victim's life or safety; feelings of anger and humiliation; use of prescription medication to treat anxiety, insomnia or other symptoms; evidence that the emotional or psychological effects of the assault were long-lasting; and a lingering fear, anxiety, or apprehension about being in vulnerable situations. *Id*. at 270-271.

With respect to mental anguish, the victim testified that he was so ashamed that instead of waiting for the police, he left the hospital, still in his hospital gown, without being discharged. The victim's mother testified that on the way to the hospital, the victim was "crying hysterically," half sitting on the passenger seat, and half slid onto the floor of the vehicle. When the victim's mother asked him what had happened, the victim told her it was "too awful" and that he did not want to talk about it. At the hospital, Dr. Matthews noted that the victim was in moderate distress, and the victim's medical record further indicated that the victim was "very emotional and tearful." Viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find that the victim suffered mental anguish and therefore personal injury.

Finally, defendant argues that there was insufficient evidence to support a finding that defendant used force or coercion to accomplish the sexual act because the victim admitted that he voluntarily entered defendant's vehicle, and there was no supporting medical evidence of physical injury or trauma. However, the victim testified that, during the assault, defendant's hand was on the back of the victim's neck, holding the victim down, while defendant penetrated the victim's anus. When the victim tried to get up, defendant "hammered" the victim on the back of the head, and it was only after some struggling that the victim opened the vehicle door and escaped. The victim testified that he had a lump on his forehead and complained to Dr. Matthews of a pain in his head. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find that defendant used force or coercion to accomplish the sexual penetration. Therefore, sufficient evidence was presented for a rational trier of fact to have found defendant guilty of CSC I pursuant to MCL 750.520b(1)(f).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien