*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD DUANE DAY, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 2, 2020

No. 346061
Wayne Circuit Court
LC No. 17-001694-01-FH

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Defendant, Gerald Duane Day, Jr., appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2), attempted unlawful imprisonment, MCL 750.349b, two counts of felonious assault, MCL 750.82, and domestic violence, MCL 750.81(2). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 20 to 40 years for the home invasion conviction, 5 to 20 years for the unlawful imprisonment conviction, 5 to 15 years for each felonious assault conviction, and three months and three days for the domestic violence conviction, to be served concurrently. On appeal, defendant challenges the sufficiency of the evidence supporting his convictions and alleges several scoring errors. We affirm defendant's convictions and his sentence.

Defendant was convicted of breaking into the home of his ex-girlfriend on December 20, 2016, and then holding her captive and assaulting her. According to the victim, she and defendant had previously dated, but she decided to end the relationship. Although she had told defendant to leave her alone, defendant continued to contact her and send her letters and text messages. Sometime after midnight on December 20, 2016, the victim was inside her home when she discovered defendant trying to open a window at the house. She told defendant to leave and go away, but he refused. She then called 911. While she was on the phone, she discovered defendant inside her house. Afterward, defendant took her phone and held her captive inside the house for several hours. During this time, defendant tied up one of the victim's hands, continuously threatened her, repeatedly used a taser against her, and used a knife to slash her coat while she was wearing it and to threaten to kill her. Eventually, after defendant took the victim outside, she was able to run away and escape.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant challenges his convictions on appeal by arguing that the prosecutor failed to present sufficient evidence to establish various elements of each of the offenses beyond a reasonable doubt. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence in support of a criminal conviction. This Court must view the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). "Circumstantial evidence and reasonable inferences arising from the evidence can sufficiently prove the elements of a crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003) (quotation marks and citation omitted). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

## A. FIRST-DEGREE HOME INVASION

MCL 750.110a provides, in relevant part:

> (2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

> (a) The person is armed with a dangerous weapon.

> (b) Another person is lawfully present in the dwelling.

In *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010), our Supreme Court explained the elements of first-degree home invasion as follows:

> Element One: The defendant either:

> 1. breaks and enters a dwelling or

> 2. enters a dwelling without permission.

> Element Two: The defendant either:

> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or

-2-

2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, either:

1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling.

Defendant only challenges the first alternative option for element one, arguing that there was no evidence that he broke and entered the victim's home through the bedroom window.

Defendant's argument is unpersuasive for two reasons. First, there was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that defendant actually broke and entered the home through the bedroom window. The victim testified that on December 20, 2016, when she heard a noise, she went into her brother's bedroom and saw defendant outside trying to open the window. She told defendant to leave, but he refused. The victim then spoke to defendant through a door, but he tried to barge through it and she called the police. While she was on the phone, she discovered defendant inside the home. Later, she discovered that the window in her brother's room had been broken.[1] Given that the victim saw defendant trying to open the same window that was later found to be broken, and that defendant had entered her home while she was on the phone, the jury could reasonably infer that defendant gained entry by breaking the bedroom window and entering through that window. The fact that the same window was observed the next day to be open after defendant entered without permission also supported that inference.

Second, regardless of whether defendant broke and entered through the bedroom window, the jury could nevertheless conclude beyond a reasonable doubt that defendant entered the victim's home without permission. When the victim saw defendant trying to open her brother's bedroom window, she screamed at him to "leave" and told him to "go away from here." When defendant did not go away, she again told him through the storm door, "Leave me alone. Leave me. I will call the Police on you. Leave me alone." Defendant persisted in his requests to talk to the victim and, although the victim agreed to talk to him outside, she told him that she would not let him into the house. In addition, defendant tried to barge into the home through the door, but the victim shut it and called 911. Given that the victim thereafter discovered defendant inside the home while she was talking to the 911 dispatcher, despite all of her attempts to keep him out, the jury could find beyond a reasonable doubt that defendant entered the home without permission. Accordingly, there was sufficient evidence to support the challenged element on either alternative basis.

---

[1] The evidence suggests that by "broken," the victim meant that the window had been forced open.

## B. ATTEMPTED UNLAWFUL IMPRISONMENT

To prove attempted unlawful imprisonment, the prosecutor had to prove beyond a reasonable doubt that defendant intended to commit unlawful imprisonment. MCL 750.349b defines unlawful imprisonment in pertinent part:

(1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

* * *

(b) The restrained person was secretly confined.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

* * *

(3) As used in this section:

(a) "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

(b) "Secretly confined" means either of the following:

(i) To keep the confinement of the restrained person a secret.

(ii) To keep the location of the restrained person a secret.

In addition, the prosecutor had to prove beyond a reasonable doubt that defendant took "an overt act going beyond mere preparation toward committing the crime" of unlawful imprisonment. See *People v Stapf*, 155 Mich App 491, 494; 400 NW2d 656 (1986).

Defendant argues that there was no evidence that he ever restrained the victim. However, sufficient evidence supports a finding that defendant attempted to forcibly confine the victim and that the confinement was secret. Specifically, the evidence showed that defendant entered the victim's home without her permission while she was reporting his conduct to the 911 dispatcher. Defendant ordered the victim to end the call. The victim told defendant that the police were on their way and urged him to leave. Defendant did not leave. Instead, he turned off the lights in the house and took the victim's phone. When police officers arrived, defendant ordered the victim to be quiet. She testified that she was too afraid to scream, and she thought defendant would hurt her if the police came in the house because she knew that defendant always carried a knife in his sock. From this, the jury could reasonably infer that defendant "forcibly confined [the victim] so as to interfere with [her] liberty without [her] consent or without lawful authority." MCL 750.349b(3)(a). Further, when the police walked around the outside of the house, defendant

grabbed the victim and moved her around the inside of the house to prevent police from discovering her location. In addition, at some point, defendant attempted to tie the victim's hands with a cellular telephone charger cord to prevent her from calling the police again. From this, rational jurors could find beyond a reasonable doubt that not only did defendant at the very least attempted to restrain, i.e., forcibly confine, the victim but that the confinement was secret. Accordingly, the evidence was sufficient to support defendant's conviction for attempted unlawful imprisonment.

Defendant notes that, after the police left, the victim had sexual intercourse with him and that he was then willing to take her to the hospital when she became sick.[2] But as this Court explained in *People v Kosik*, 303 Mich App 146, 152; 841 NW2d 906 (2013), "[w]hether and when defendant chose to release the victim is immaterial to whether there was secret confinement." The events that took place after the police left do not negate the secret confinement that had already occurred.

Despite the facts that defendant entered the victim's home without permission and deprived her of assistance from the police, he challenges the sufficiency of the evidence because he "only" wanted to talk to her. The plain language of MCL 750.349b(1)(b) makes no reference to the purpose of the secret confinement. Although MCL 750.349b(1)(c) requires the restraint to have facilitated the commission of another felony or flight after commission of another felony, MCL 750.349b(1)(b) is not similarly limited. Therefore, the purpose for the secret confinement is immaterial and defendant's argument is unavailing.

## C. FELONIOUS ASSAULT

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted). On appeal, defendant argues only that the prosecution failed to establish that he possessed a dangerous weapon to support his two felonious assault convictions because the police did not find the knife and taser that defendant allegedly used. Again, we disagree.

The victim specifically testified that defendant attacked her with a taser four or five times, and as a result of the stress, she began to vomit. In addition, as they prepared to go to the hospital because of the victim's stomach condition, they again began to argue about whether the victim would report defendant to the police. According to the victim, defendant told her, "I will kill you. I will take you away from here." He then grabbed a knife from the kitchen and started slashing at the coat she was wearing. The victim's testimony, if believed, provided direct evidence that defendant was in possession of two dangerous weapons, which he used to commit two separate assaults. *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976) ("A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict."). Even though the weapons were not recovered by the police, no corroborative physical evidence was

---

[2] The victim testified that she had sex with defendant because it had calmed him in the past, and that she became sick when defendant tased her because stress affects her irritable colon condition.

required. It is outside the province of this Court to reassess the victim's credibility. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses."). In sum, there was sufficient evidence that defendant used a taser and a knife to assault the victim, thereby supporting his convictions of felonious assault.

## D. DOMESTIC VIOLENCE

The elements of domestic violence are "(1) the commission of an assault or assault and battery and (2) a dating relationship [or previous dating relationship] between the parties." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011); MCL 750.81(2). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998).

In this case, there was no dispute that defendant and the victim had a dating relationship that ended a few months before the instant offenses. And as indicated above, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant committed an assault. Therefore, there was sufficient evidence to support defendant's conviction for domestic violence.

Defendant repeats his earlier argument that there was no physical evidence to support the victim's testimony. Again, the jury was entitled to rely on the victim's testimony alone, and the absence of physical evidence was merely a factor for the jury to consider in its evaluation of the weight and credibility of her testimony. It is beyond the province of this Court to substitute its judgment for that of the jury regarding credibility. *Lemmon*, 456 Mich at 637. Defendant also generally asserts that any physical evidence could have been exculpatory and that it should have been recovered by the police. He fails to explain, however, how the evidence would have been exculpatory. In any event, " 'the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide.' " *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004), quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995).

## II. SCORING OF OFFENSE VARIABLES ("OVs")

Defendant argues that he is entitled to resentencing because the trial court erred in scoring OVs 7, 8, and 10. We find no error.

In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court clarified both the quantum of evidence necessary to support a scoring decision and the standard of review to be used by this Court, stating:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence.

Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.

## A. OV 7

Defendant challenges the trial court's assessment of 50 points for OV 7. MCL 777.37(1)(a) provides that OV 7 should be scored at 50 points when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Excessive brutality has been defined as "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds in *Hardy*, 494 Mich 430. The trial court found that defendant engaged in brutality that was designed to substantially increase the victim's fear and anxiety during the offense.

The evidence demonstrated that from the very beginning of the home invasion, defendant isolated the victim by taking her phone and then hiding her to prevent her detection by the police who responded to her call. Then, defendant tied her up. Significantly, he used a taser on her repeatedly, which caused her to vomit three times. He also threatened to kill her before grabbing a knife from the kitchen and slashing into the coat the victim was wearing. Defendant remained in the victim's home for hours after he first entered against her will. The combination of defendant's efforts to prevent the victim's detection by the police, his continuous threats, his repeated use of a taser against her, and his use of a knife to cut her coat while she was wearing it and while threatening to kill her qualify as egregious conduct designed to substantially increase the victim's fear and anxiety during the offense. Accordingly, the trial court properly assessed 50 points for OV 7.

## B. OV 8

Defendant challenges the trial court's assignment of 15 points for OV 8. MCL 777.38(1)(a) provides that 15 points should be assessed for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." In *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017), our Supreme Court explained that "[i]f a victim is carried away or removed 'to another place of greater danger or to a situation of greater danger,' MCL 777.38(1)(a), the statutory language is satisfied. Nothing in the statute requires that the movement be greater than necessary to commit the sentencing offense . . . ." The Court affirmed the scoring of OV 8 at 15 points where the

> defendant took the victim from the living room into his bedroom in order to sexually assault her. From those facts, the trial court could reasonably determine by a preponderance of the evidence that the victim was "removed" to a location where the sexual assault was less likely to be discovered, which rendered the location a "place of greater danger" or "a situation of greater danger." [*Id.* at 21-22.]

Defendant contends that the movement from room to room within the house was incidental to unlawful imprisonment and that the trial court should not have used it to score OV 8. Our

Supreme Court rejected this "incidental movement" exception to scoring of OV 8 in *Barrera*. As the Court explained:

> A plain reading of asportation is this: If a victim is carried away or removed "to another place of greater danger or to a situation of greater danger," MCL 777.38(1)(a), the statutory language is satisfied. Nothing in the statute requires that the movement be greater than necessary to commit the sentencing offense, and we see no other basis for reading the statute as excluding the movement of a victim that is only incidental to that offense. See *People v Hardy*, 494 Mich 430, 442; 835 NW2d 340 (2013) ("[A]bsent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables."). [*Id*. at 21.]

In the present case, defendant moved the victim to a place of greater danger when he grabbed her and pushed her around the house to avoid detection by the police who responded to the victim's 911 call. Defendant's movement of the victim to a place where she would not be detected allowed him to tie her up, tase her multiple times, assault her by slashing her coat with a knife while she was wearing it, and threaten her with death. Accordingly, the trial court properly assessed 15 points for OV 8.

## C. OV 10

Defendant lastly argues that the trial court erred by assessing 15 points for OV 10. MCL 777.40 provides:

> (1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) Predatory conduct was involved ……………………………… 15 points

> (b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status …………………………………………………………...… 10 points

> * * *

> (3) As used in this section:

> (a) "Predatory conduct" means preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization.

> (b) "Exploit" means to manipulate a victim for selfish or unethical purposes. Exploit also means to violate section 50b of the Michigan penal code, 1931 PA 328, MCL 750.50b, for the purpose of manipulating a victim for selfish or unethical purposes.

(c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.

A trial court properly assesses 15 points for OV 10 if it answers the following questions affirmatively:

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Lampe*, 327 Mich App 104, 115; 933 NW2d 314 (2019), quoting *People Cannon*, 481 Mich 161, 162; 749 NW2d 257 (2008).]

To "victimize" means "to make a victim of." *People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011) (quotation marks, brackets, and citation omitted). A "victim is defined as a person who suffers from a destructive or injurious action." *Id*. (quotation marks, ellipses, and citation omitted).

The record evidence in the present case establishes that defendant engaged in conduct before the commission of the offense and that that conduct was directed toward the specific victim in this case. The victim explained that defendant was nice to her when he visited the business where she worked and they developed a friendship, which developed into a romantic relationship. But when she later broke off the relationship and asked to be left alone, defendant refused to stop contacting her. Instead, he repeatedly visited her work and home, sent her text messages, and left her notes. The victim was so distressed by defendant's refusal to listen to her and to leave her alone that she reached out to defendant's mother for help. This conduct was tantamount to stalking. See MCL 750.411h(1)(d) (defining stalking as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.") In addition, defendant waited until the middle of the night, when help might be more difficult to come by, and the victim was alone before forcing his way into her home, against her repeatedly expressed wishes. The circumstances of the offense, i.e., in the middle of the night and while the victim was alone, rendered the victim particularly vulnerable. See *Kosik*, 303 Mich App at 160. Further, this Court has acknowledged that waiting until a person is alone to strike may be evidence of predatory conduct. See *id*.; *People v Savage*, 327 Mich App 604, 630; 935 NW2d 69 (2019). The trial court properly assessed 15 points for OV 10.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola