## PEOPLE v. POPE.

1. WITNESSES—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS.
    Prior inconsistent statements may be used to impeach the cred-
    ibility of any witness on material matters.

2. SAME—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS—TESTI-
    MONY BY THIRD PARTY.
    Exclusion of testimony of police officer, who was present when
    conversation took place between prosecutor and witness in
    trial for larceny from the person, was error in case where
    foundation for police officer's testimony for impeachment
    purposes was laid by asking witness whether he had made
    certain prior statements, which he denied (CL 1948, §
    750.357).

3. SAME—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS—QUES-
    TIONS BY PROSECUTOR.
    Questions by prosecutor which demanded admissions by res
    gestae witness, in prosecution for larceny from person, that
    he had made prior statements inculpating defendant, which
    the witness denied making, held, proper as laying foundation
    for impeachment of witness as permitted to prosecutor by
    statute (CL 1948, §§ 750.357, 767.40a).

4. CRIMINAL LAW—SAVING QUESTIONS FOR REVIEW—FAILURE TO IN-
    STRUCT JURY—REQUEST TO CHARGE.
    Failure of the court in prosecution for crime to instruct on any
    point of law is not ground for setting aside jury's verdict

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses § 767 et seq.
  May a witness who testifies to facts be impeached by showing
    of prior inconsistent expressions of opinion by him. 66 ALR 289,
    158 ALR 820.
[2, 3] 58 Am Jur, Witnesses §§ 776, 779.
[4, 5] 53 Am Jur, Trial §§ 511, 514.
[6] 29 Am Jur 2d, Evidence §§ 723; 58 Am Jur, Witnesses §§ 776,
    779.

unless such instruction is requested by the defendant (CL 1948, § 768.29).

**5. Same—Prior Inconsistent Statements—Substantive Proof—Instructions.**

Failure to instruct jury that reference by prosecutor to prior statements made by *res gestae* witness in prosecution for larceny from person should not be considered as substantive proof *held,* not error, where the charge adequately advised the jury that they were to find the facts solely from the testimony of the witnesses presented, and no instruction on the subject was requested (CL 1948, § 750.357).

**6. Same — Res Gestae — Credibility — Prior Inconsistent Statements.**

Prosecutor was properly allowed to question *res gestae* witness as to prior inconsistent statements, after he had testified that defendant was not the perpetrator of crime of larceny, since such a witness was one the prosecutor was obliged to call (CL 1948, § 750.357).

Appeal from Recorder's Court of Detroit; Koscinski (Arthur J.), J. Submitted Division 1 October 7, 1966, at Detroit. (Docket No. 66.) Decided November 27, 1967.

Edward Pope was convicted of larceny from the person. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Edward A. Khoury,* for defendant on appeal.

J. H. Gillis, J. On February 28, 1964, in the recorder's court for the city of Detroit, after the defendant, Edward Pope, had been convicted by a

jury of the crime of larceny from the person,[1] he was given a 5-to-10-year sentence.

The record indicates that in the early hours of the morning of November 6, 1963, the complainant, Helen Ninness, was sitting in a parked car in front of Green's Open Pit Barbecue in the city of Detroit while her male escort was inside waiting for an order of shrimp. A man approached the car, repeated several times to the complainant, "hi honey", and then opened the door and grabbed the complainant's purse, which was in her lap. The complainant did not get a good look at the man's face because it was dark outside and because of the relative position of the parties.

Henry Wyatt, a chef in the barbecue establishment, called as a witness by the prosecution, testified that he saw the defendant at the scene of the crime some time during the night in question. Subsequent to this testimony, the prosecutor proceeded in the following manner, after referring to Mr. Wyatt as a *"res gestae* witness, hostile witness".

*"Q. (By Mr. Nolan)*: Do you recall talking with me yesterday?

*"A.* I do.

*"Q.* Do you recall answering my questions?

*"A.* I do.

*"Q.* I asked you some questions, is that right?

*"A.* You did.

*"Q.* Did I ask you yesterday whether you had seen this man with anything in his hand?

*"Mr. Roth (defense counsel)*: That's going to be objected to at this particular time. What they—conversation they had there, I don't know and that's strictly hearsay. There's been no transcript of this particular matter.

---

[1] CL 1948, § 750.357 (Stat Ann 1954 Rev § 28.589).

*"Mr. Nolan:* First,—

*"The Court (interposing):* Objection overruled.

*"Q. (By Mr. Nolan):* Can I take exception to Mr. Roth's statement, he doesn't know—

*"The Court:* Oh, Mr.—

*"Mr. Nolan (interposing):* He was there.

*"Mr. Roth:* I wasn't there. I walked in toward the end and I walked out again. I didn't want to go in there with you.

*"The Court:* Proceed.

*"Q. (By Mr. Nolan):* Did I ask you whether you had seen this man with anything in his hand?

*"A.* I don't recall that you asked me anything in his hand. You asked me did I see him. Yes, you did awhile ago.

*"Q.* Do you remember telling me that you had seen him with something in his hands?

*"A.* I don't recall, remember telling you anything about he had in his hand.

*"Q.* Do you, do you remember telling me you saw him with a purse?

*"A.* I don't remember telling you I saw him with a purse.

*"Q.* You don't remember?

*"A.* No, I don't.

*"Q.* Whether you told me that or not?

*"A.* I know I did not.

*"Q.* You know you did not?

*"A.* I sure do.

*"Q.* Do you remember telling me you saw him go to a car and open the door?

*"A.* Well, eh, I don't remember telling you he went to the car and opened the door.

*"Q.* You don't remember that?

*"A.* No.

*"Q.* Do you remember telling me you saw him approach the car?

*"A.* Approach the car, what you mean approach the car?

"*Q.* Walk up to the car and reach for the handle.

"*A.* I remember telling you it was a bunch of cars out there and he was standing out there.

"*Q.* Do you remember telling me that you approached, walked up to the car?

"*Mr. Roth:* May it please, your Honor,—

"*Mr. Nolan (interposing):* Answer that yes or no.

"*Mr. Roth:* I raise an objection to all this line of questioning by the prosecution. It's improper.

"*The Court:* On what grounds?

"*Mr. Roth:* It's immaterial and it's hearsay. There's no bearing as far as this case is concerned.

"*The Court:* On what grounds?

"*Mr. Roth:* I'm objecting, it's hearsay, self-serving. It's the prosecutor's self-serving declaration made to the man.

"*The Court:* He's asking him questions.

"*Mr. Roth:* The man has denied it.

"*The Court:* That's right. Objection overruled. This witness is a witness that the people are obligated to call by law. He may be examined and cross-examined.

"*Mr. Roth:* All right.

"*Q.. (By Mr. Nolan):* Do you remember telling me that you saw the man, Mr. Pope, go up to a car?

"*A.* No, I don't remember telling you that.

"*Q.* You don't remember that, is that right?

"*A.* That's right. That's what I said.

"*Q.* Do you remember a time, a couple of—three days after this incident when you went to the police station for a showup to identify somebody?

"*A.* That's right.

"*Q.* And who did you identify?

"*A.* I identified Mr. Pope there.

"*Q.* Mr. Pope?

"*A.* Uh huh.

"*Q.* Did you have a conversation with the officer at that time?

"*A.* Well, they didn't especially have no conversation with me. They had just take me over there and I identified him and carried me back to my job.

"*Q.* You didn't have any conversation?

"*A.* Not to remember.

"*Q.* Hmm?

"*A.* Not to remember.

"*Q.* You don't remember. Do you remember whether you—well you had enough conversation to identify somebody, didn't you?

"*A.* I did, eh—

"*Q. (interposing)*: And who did you identify him as being? Where did you say this man was that you pulled out of the line, or you selected out of the line?

"*A.* Who did I say he was?

"*Q.* Yes.

"*A.* Well, I just told you, that man there.

"*Q.* What did you tell them about that man there?

"*A.* He asked me—

"*The Court (interposing)*: Well,—

"*A. (continuing)*—did I know him and was that the man. I told him yeah, that's the man that I saw.

"*Q.* Was that the man that what?

"*A.* That was in the restaurant.

"*Q.* That had been in the restaurant. Do you remember telling the officer at the showup you saw Mr. Pope walk up to the car?

"*A.* The officer didn't ask me anything when they come in there, the restaurant.

"*Q.* Did you tell him, the officer at the showup, did you tell him that you saw this defendant, Edward Pope, walk up to a car and reach for the handle on the street?

"*A.* Not I.

"*Q.* You deny that?

"*A.* Not I, no.

"*Q.* That's all."

Defendant appeals his conviction contending the trial court erred in allowing the prosecutor to proceed in the foregoing manner, citing *People* v. *Thomas* (1960), 359 Mich 251.

The people cite CL 1948, § 767.40a (Stat Ann 1954 Rev § 28.980[1]) to justify this method of examination. This statute states:

"Witnesses whom the people are obliged by law to call as res gestae witnesses may be impeached the same as though such witnesses had been called by the respondent."

Prior inconsistent statements, verbal or otherwise, may be used to impeach the credibility of any witness, including the defendant, on material matters. See 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 438, p 538 *et seq. People* v. *Werner* (1922), 221 Mich 123.

The record indicates that the prosecutor offered both the testimony of the officer who was present at the showup and of another officer who was present when the conversation, which the prosecutor intimated he had had with the witness, took place. Upon objection by defense counsel, the trial court excluded this testimony as hearsay although the prosecutor indicated to the court it was offered, not as substantive evidence, but only as affecting the credibility of the witness. This testimony should have been received. It was competent as affecting the credibility of the witness Wyatt on a material matter. The laying of the foundation necessary to permit such impeachment was therefore proper. The *Thomas Case,* cited by defendant, does not apply to this situation. In *Thomas,* the express purpose of the prosecutor was to refresh the recollection of the witness, not to impeach her testimony. Here, the prosecutor obviously sought to impeach the credibility of the witness.

Defendant further contends that the trial court committed reversible error in failing to instruct the jury that the reference by the prosecutor to the prior statements of the witness Wyatt should not be con-

sidered as substantive proof, despite the failure to request such instructions. We do not find error in this regard. The charge adequately advised the jury that they were to find the facts solely from the testimony of the witnesses presented.[2]

In *People* v. *Keywell* (1931), 256 Mich 139, a *res gestae* witness called by the people testified that the defendant was not the killer.

"He was asked about alleged statements to the contrary, and denied making them. It is contended that the court erred in not instructing the jury, at the time of taking the testimony, that contradictory statements, if any, would not constitute substantive evidence. This the court should have done, because there was such a request. Was defendant harmed by the failure of the court to so instruct the jury? Certainly not at that time, for the denial by the witness relegated the prosecution to its proof in contradiction. The request was not renewed when impeaching testimony was introduced or in a request to charge the jury on the subject. The questions were proper for the purpose of affecting the credibility of the witness the prosecution was required to call. In such case the prosecution does not vouch for the credibility of the witness." *People* v. *Keywell, supra,* at pp 141, 142.

We have considered defendant's other allegations of error, and we find no merit in them.

Affirmed.

LESINSKI, C. J., and HOLBROOK, J., concurred.

---

[2] CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052): "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."