*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EVAN ANDREW OSLUND,

        Defendant-Appellant.

UNPUBLISHED
March 30, 2023

No. 360675
Livingston Circuit Court
LC No. 22-027137-FH

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

HOOD, P.J. (*dissenting*).

I respectfully dissent. This case exposes a potential loophole in the automatic waiver statute, MCL 764.1f. By affirming, we allow the prosecution to elevate an otherwise juvenile charge to an automatic waiver charge by alleging use of a dangerous weapon, when the weapon at issue is an article of clothing. By affirming, we also absolve the district court of its responsibility to make findings and conclusions that there was sufficient evidence that the juvenile defendant used the items—in this case, a flip flop and a tennis shoe—as weapons, as opposed to an article of clothing worn during a serious but unarmed assault. Taken to its logical conclusion, the majority holding would allow the prosecution to charge as an adult any juvenile that is involved in a fight— so long as the fight is bad and someone involved was wearing clothes or shoes. It would also strip the family division of its jurisdiction over traditional waiver proceedings and deprive juveniles of the protections associated with those proceedings in a way not contemplated by the statute.

Instead, I would reverse the circuit court's decision on the motion to quash and remand for the trial court to transfer defendant EO's case to the family division for further proceedings as a traditional waiver case. Here, the district court did not make findings or legal conclusions about whether and how the flip flop and tennis shoe functioned as a dangerous weapon as it relates to EO. See *People v Buford*, 69 Mich App 27, 32; 244 NW2d 351 (1976) (analyzing whether a boot

-1-

was used as a weapon, not just whether it was used dangerously).[1] To the extent that the trial court found sufficient evidence that the flip flop and tennis shoes were weapons, which is to say instruments of armed combat, it failed to make findings that EO was the juvenile who was armed during the assault as required by MCL 764.1f(2)(b). Either of these errors provide a basis for reversal.

## I. BACKGROUND

The assaults at issue in this case are two kicks during a 12-second attack.[2] Though the trial court referred to it as a shoe, there were two dangerous weapons at issue in this case: a tennis shoe and a flip flop or athletic slide.

The majority opinion accurately describes the evidence presented at the preliminary examination regarding the precursor to the attack. Codefendant TI lured the complainant, QD, to a skate park and assaulted him.

The alleged assault was recorded, and the prosecution published the video at the preliminary examination. While at or leaving the skate park, codefendants TI and CB began punching the complainant. As documented on the video, TI and CB punched the complainant for two or three seconds before they all fell. They continued to punch the complainant when he was on the ground. At approximately five seconds into the 12-second video, one of the codefendants kicked the complainant while wearing a black tennis shoe. Three seconds later, the other codefendant kicked the complainant while wearing a white flip flop. The flip flop flew off after the kick. Eleven seconds into the video, we can see one codefendant carrying both of his flip flops while walking away from the complainant who was still on the ground. Both of the kicks appeared to be blows to the complainant's back or torso.

The prosecution alleges that EO, who was not otherwise involved with the attack, agreed to film the attack. The prosecution presented evidence that he confessed to his involvement to his assistant principal.

The prosecution charged EO, CB, and TI, by filing a criminal complaint instead of a juvenile petition. Critically, EO was not charged with conspiracy to commit assault with intent to do great bodily harm. At the preliminary examination, the prosecution acknowledged that it did not have evidence of a conspiracy. Instead, the prosecution charged EO with aiding and abetting assault with intent to do great bodily harm. The prosecution's theory is that EO encouraged CB

---

[1] Although *Buford* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). This rule applies to other pre-November 1, 1990 cases of this Court referenced in this opinion.

[2] The alleged assault was recorded, and the prosecution published the video at the preliminary exam. The majority described the assault as involving repeated kicking. There are only two kicks that are clearly visible five seconds and eight seconds into the video. The first kick involved a tennis shoe, and the second kick involved a flip flop or athletic slide.

and TI by agreeing to film the assault. There was no evidence or allegation that EO was ever armed.

Following the preliminary examination, the district court granted the motion to bind over. After considering arguments regarding automatic waiver under MCL 764.1f(2)(b), the district court announced its decision:

> I think the video speaks for itself. I think the Court is bound by the case law on this. And I think that, again, I think there's a catch-all provision. I think the legislature didn't specifically exclude shoes or anything like that. They're pretty clear on everything else, but again, they had that sub three in there—an object that is likely to cause death or bodily injury when used, when used as a weapon. And I do guess you can make the argument, based on whoever was doing the kicking, the guy I guess was, you know, he had the white shoes that, you know, maybe came off. I don't know if he kicked them off or, you know, wanted them off or you argue one kick might have been to the head, but the rest were to the body that was after the shoes came off. I don't know if that was luck. I don't know where he was aiming. You know, those are all questions of fact for somebody else to decide. But when things started, he got kicked when the shoe was on. And I think that the catch-all catches it.
>
> So based upon the case law that we've cited in this motion and the previous motion hearing, uh, and I think I'm bound by, you know, *People versus Hale*[3] and the subsequent decisions after that. The *Goolsby*[4] case, as counsel has indicated. So it falls under the catch-all and object is likely to cause death or bodily injury when used as a weapon.

The district court bound over EO on the prosecution's aiding-and-abetting theory.

The majority opinion otherwise accurately describes the factual background.

## II. STANDARD OF REVIEW

The majority opinion states the correct standard of review. In short, we stand in the same shoes as the circuit court when reviewing the motion to quash. *People v Anderson*, 501 Mich 175, 189; 912 NW2d 503 (2018).

## III. LAW AND ANALYSIS

The trial court should have granted the motion to quash for two reasons. First, a flip flop or tennis shoe does not satisfy the statutory definition for dangerous weapon under the automatic waiver statute. See MCL 764.1f(2)(b). See also *Buford*, 69 Mich App at 31-32 (analyzing whether

---

[3] *People v Hale*, 96 Mich App 343, 345; 292 NW2d 204 (1980), vacated on other grounds 409 Mich 937 (1980).

[4] *People v Goolsby*, 284 Mich 375; 279 NW 867 (1938).

a boot was used as a weapon, not just whether it was used dangerously). Second, even if the Court were somehow to conclude that the flip flop and tennis shoe in this case were dangerous weapons, the prosecution did not present evidence that EO was a juvenile who was armed—even with a flip flop—during the assault as required by MCL 764.1f(2)(b).

## A. AUTOMATIC WAIVER STATUTE AND MCL 764.1f(2)(b)

At the outset, this case requires an understanding of the automatic waiver statute, MCL 764.1f, a law that requires the courts to treat, try, and sentence juveniles over the age of 14 as adults when they are accused of certain serious—and usually capital—offenses like murder, first-degree criminal sexual conduct, and first-degree arson. See MCL 764.1f(2)(a).

As the majority correctly observes, with limited exception, the family division of the circuit court has exclusive jurisdiction over juveniles that are accused of a crime. *People v Conat*, 238 Mich App 134, 139; 605 NW2d 49 (1999), citing MCL 712A.1(1)(c) and MCL 712A.2(a)(1). This includes jurisdiction over juveniles who are accused of the serious crimes included in the automatic waiver statute when the prosecutor chooses to charge them as juveniles. See MCL 712A.2(a)(1) ("The court has jurisdiction over a juvenile 14 years of age or older who is charged with a specified juvenile violation only if the prosecuting attorney files a petition in the court instead of authorizing a complaint and warrant.").

In the family court, when a juvenile is accused of a crime, the juvenile is entitled to certain special procedures. See, e.g., MCL 712A.2 (granting jurisdiction to the family division); MCL 712A.2b (providing procedural safeguards); MCL 712A.2d (providing procedure for prosecution to petition to try a juvenile as an adult within the family division); MCL 712A.4 (providing requirements for traditional waiver). See also MCR 3.950(D) (providing procedures for traditional waiver). One such procedure is known as "waiver." See MCL 712A.4. When a juvenile 14 years of age or older is accused of an act that would be a felony if committed by an adult, the family division of the circuit court may waive jurisdiction upon the prosecution's motion. See MCL 712A.4(1). See also MCR 3.950(C) (providing the procedure and requirements for traditional waiver based on a prosecutor's motion). Among other requirements, before the family division waives jurisdiction, the court must "conduct a hearing to determine if the best interests of the juvenile and public would be served by granting a waiver of jurisdiction to the court of general criminal jurisdiction." MCL 712A.4(4) (providing a nonexhaustive list of factors for the court to consider when deciding whether to waive jurisdiction).

These procedures do not apply to a handful of "specified juvenile violations." See MCL 764.1f (authorizing the prosecution to file a complaint and warrant for juveniles 14 years of age or older but less than 18 years of age who have committed a specified juvenile violation); MCL 600.606 (providing the circuit court has jurisdiction over "specified juvenile violations"). Instead, these violations are automatically waived into the criminal division of the circuit court when the prosecution files a complaint and warrant against a juvenile instead of a petition. See MCL 764.1f; see also *Conat*, 238 Mich App at 140. "The effect of these automatic waiver provisions is that the prosecutor has discretion whether to charge a juvenile at least fourteen years of age who commits specified serious felonies as an adult or as a juvenile." *Conat*, 238 Mich App at 141-142. MCL 764.1f(1) provides:

If the prosecuting attorney has reason to believe that a juvenile 14 years of age or older but less than 18 years of age has committed a specified juvenile violation, the prosecuting attorney may authorize the filing of a complaint and warrant on the charge with a magistrate concerning the juvenile.

For the most part, the term "specified juvenile violation" includes only the most serious felonies: for example, first-degree arson, MCL 750.72; assault with intent to commit murder, MCL 750.83; assault with intent to maim, MCL 750.86; assault with intent to rob while armed, MCL 750.89; attempted murder (by poisoning, drowning, or strangling), MCL 750.91; first-degree murder, MCL 750.316; second-degree murder, MCL 750.317; kidnapping, MCL 750.349; first-degree criminal sexual conduct, MCL 750.520b; armed robbery, MCL 750.529; carjacking, MCL 750.529a; and robbery of a bank, safe, or vault, MCL 750.531. See MCL 712A.2(a)(1)(A) through (I); MCL 600.606(2)(a) through (i).

It also includes first-degree home invasion, MCL 750.110a, and assault with intent to do great bodily harm, MCL 750.84, but only "if the juvenile is armed with a dangerous weapon." MCL 764.1f(2)(b). The statute describes dangerous weapon as one or more of the following:

(*i*) A loaded or unloaded firearm, whether operable or inoperable.

(*ii*) A knife, stabbing instrument, brass knuckles, blackjack, club, or other object specifically designed or customarily carried or possessed for use as a weapon.

(*iii*) An object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon.

(*iv*) An object or device that is used or fashioned in a manner to lead a person to believe the object or device is an object or device described in subparagraphs (*i*) to (*iii*). [MCL 764.1f(2)(b)(*i*) through (*iv*).]

Here, the prosecution charged EO with assault with intent to do great bodily harm, MCL 750.84. The prosecution alleges that one codefendant's flip flop, and the other codefendant's tennis shoe satisfy the definition of "dangerous weapon" under MCL 764.1f(2)(b)(*iii*) ("An object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon.").

The automatic waiver statute includes conspiracy to commit a "specified juvenile violation." See MCL 764.1f(2)(f). The statute is silent on aiding-and-abetting theories, particularly as it relates to the explicit possession requirements of MCL 764.1f(2)(b).

## B. A FLIP FLOP IS NOT A DANGEROUS WEAPON FOR THE PURPOSE OF THE AUTOMATIC WAIVER STATUTE

The trial court should have granted EO's motion to quash because a flip flop is not a dangerous weapon under MCL 764.1f(2)(b).

As the majority correctly observes, our primary goal in construing a statute is "to determine and give effect to the intent of the Legislature, turning first to the statutory language to ascertain that intent." *People v Campbell*, 329 Mich App 185, 193-194; 942 NW2d 51 (2019). To that end, before applying judicial canons of statutory construction or looking to statutory analogues, first, "we interpret defined terms in accordance with their statutory definitions and undefined terms in accordance with their ordinary and generally accepted meanings." *Id*.

Instead of beginning with the statutory definition of "dangerous weapon" or plain meaning of the words contained within that section, the majority appears to begin with discussion of caselaw interpreting "dangerous weapon" under the felonious assault statute, MCL 750.82.

This is incorrect, because unlike MCL 750.82, MCL 764.1f(2)(b) explicitly defines "dangerous weapon" for the purpose of the statute. Compare MCL 764.1f(2)(b)(*i*) through (*iv*) with MCL 750.82(1) ("Except as provided in subsection (2), a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon ..."). As stated above, it explicitly defines the term as including "[a] loaded or unloaded firearm," "[a] knife, stabbing instrument, brass knuckles, blackjack, club," "[a]n object or device that is used or fashioned in a manner to lead a person to believe the object or device is an object described in [MCL 764.1f(2)(b)(*i*) through (*iii*)]." MCL 764.1f(2)(b)(*i*), (*ii*), (*iv*). This definition subsection does not include tennis shoes, flip flops, athletic slides, or socks. See *id*. But it includes a subsection defining dangerous weapon as "[a]n object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon." MCL 764.1f(2)(b)(*iii*). This is the subsection that the prosecution has applied to EO's case.

Although the statute defines "dangerous weapon," it does not define "weapon" or "use as a weapon" in subsection (2)(b)(*iii*), so we look to the ordinary definition. See *People v Thomas*, 263 Mich App 70, 73; 687 NW2d 598 (2004) ("When terms are not expressly defined by statute, a court may consult dictionary definitions.") (quotation marks and citation omitted). Generally, a "weapon" is defined as an instrument of armed combat. See *American Heritage Dictionary: Second College Edition* (defining "weapon" as "an instrument used in offensive or defensive combat"); *Random House Webster's College Dictionary* (1997) (defining "weapon" in part as "any instrument or device used for attack or defense in a fight or in combat"); West Publishing Co, *Words and Phrases Volume 44A – Vote-Weapon* (St. Paul: West Publishing Co, 1962), pp 764-766 (compiling cases in different contexts (i.e., firearms, knives, axes, razors, etc.) and stating "Webster defines a 'weapon' as 'an instrument of offensive or defensive combat; anything used or designed to be used in destroying, defeating, or injuring an enemy, as a gun or sword."). In sum, a weapon is something that changes unarmed combat to armed combat, or an unarmed assault to armed assault. It must be something that elevates the harm beyond what can be accomplished through unarmed combat. Cf. *Buford*, 69 Mich App at 31-32. Our Court has applied this distinction in the very cases on which the district court purported to rely. See *id*. (distinguishing *People v Goolsby*, 284 Mich 375; 279 NW 867 (1938), and holding that a court must determine whether an article of clothing was merely apparel or used as an instrument of combat).

Here, the statutory definition of "dangerous weapon" and ordinary definition of "weapon" would require the district court to determine whether the flip flop or tennis shoe was in fact an instrument of armed combat. It was not. Unlike a boot or stiletto, they did nothing to amplify the harm that could be accomplished through armed combat. This was evidenced by the fact that

admittedly serious physical injury was largely accomplished through punches, as CB and TI appeared to kick the complainant once each. The analysis could—and should—stop here.

But if we were to look beyond the plain language of the statute and ordinary dictionary definitions of these words in the statute and apply canons of statutory construction usually reserved for ambiguous statutes, the canon of *ejusdem generis* (of the same kind, class, or nature) provides more illumination than *in pari materia*. See *Zug Island Fuels Co, LLC v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356419); slip op at 4 (noting that we reserve canons of statutory construction for ambiguous statutes). See also *SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 73 n 26; 894 NW2d 535 (2017) (Stating that the application of *in pari materia* is not necessarily conditioned on a finding of ambiguity, but can also be used to resolve conflicts between two statutes). Again, the statute is unambiguous, so applying a canon should be unnecessary. Nonetheless, before applying *in pari materia* and looking to other parts of the penal code, the canon of *ejusdim generis* directs us to look within this section of the statute at the other words in MCL 764.1f(2)(b) defining "dangerous weapon." This includes "[a] loaded or unloaded firearm," "[a] knife, stabbing instrument, brass knuckles, blackjack, club, or other object specifically designed or customarily carried or possessed for use as a weapon." MCL 764.1f(2)(b)(*i*) and (*ii*). The statute does not explicitly include "flip flops," "athletic slides," or "tennis shoes." See *id*. A commonsense reading of the phrase "[a]n object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon," in light of the preceding phrases which include guns, knives, brass knuckles, and blackjacks, should lead us to conclude that MCL 764.1f(2)(b)(*iii*) requires something more or different than a flip flop, tennis shoe, or other article of clothing. While it would certainly include a sock filled with pennies, it does not include a sock filled with a foot. Applying this canon of construction, our analysis could remain within the operative statute.

Instead, the majority opinion, like the district court, relied on *People v Buford*, 69 Mich App 27, 32; 244 NW2d 351 (1976), and *People v Hale*, 96 Mich App 343, 345; 292 NW2d 204 (1980), vacated on other grounds 409 Mich 937 (1980), cases interpreting MCL 750.82 and respectively holding that a boot can be a dangerous weapon and that a shoe can be a dangerous weapon when used to kick in the groin repeatedly. See *Buford*, 69 Mich App at 31-32 (boots can be a dangerous weapon); *Hale*, 96 Mich App at 345 (relying on *Buford* and *Goolsby* to hold that shoes may be a dangerous weapon when used in a dangerous manner, such as repeated kicks to the groin). And like the district court, the majority opinion broadens the holdings from both *Buford* and *Hale*.

*Buford* should not apply to this case because *Buford*'s holding was limited to "boots," not all footwear. See *Buford*, 69 Mich App at 31-32 (relating to boots). Likewise, the cases on which *Buford* relied exclusively involved "boots." See *id.*, citing *Berfield v State*, 458 P2d 1008, 1009 (Alas, 1969) ("heavy black boots" used to kick the victim in the ribs and head were dangerous weapons "because they were used as something to fight with-as instruments of offensive combat"); *People v Rumaner*, 45 AD2d 290, 292; 357 NYS2d 735 (NY App 1974) ("heavy leather boots" used to kick the victim in the face 10 or 12 times were "dangerous instruments" under New York's penal law because the "boots were used to inflict serious physical injury upon the complainant and therefore could be found to be a dangerous instrument"); *Orrill v State*, 509 P2d 930, 931-932 (Okla Crim App, 1973) (acknowledging that shoes can be a deadly weapon under the facts of the case because the victim was 73 years old when kicked in the head, noting "[a]dditionally, since

cowboy boots were used rather than shoes, the probability of them being a dangerous weapon is enhanced.”).  They did not involve flip flops or tennis shoes.  See *Buford*, 69 Mich App at 31-32 (collecting cases).  See also *Stroman v United States*, 878 A2d 1241 (DC, 2005) (holding that a flip flop sandal, which the defendant used to strike the victim on the forehead and cause a cut that required 15 stictches, was not a dangerous weapon, as was required for a conviction for attempted possession of a prohibited weapon).[5]

In *People v Hale*, on which the district court and the majority also rely, this Court expanded the holding from *Buford* to apply to shoes.  See *Hale*, 96 Mich App at 345.  With limited explanation or analysis, this Court announced that “a shoe as well as a boot may be considered a dangerous weapon under the statute since it is an object that may be used in a dangerous manner.”  *Id*.  This Court failed to engage in any of *Buford*’s analysis, assessing whether the defendant used an item of apparel as an instrument of armed combat, not just whether it was dangerous.  Compare *Hale*, 96 Mich App at 345, with *Buford*, 69 Mich App at 31-32 (stating that ordinary items that may be used as dangerous weapons, such as an automobile, see *Goolsby*, 275 Mich at 278-279, broomstick, *People v Knapp*, 34 Mich App 325, 333-334; 191 NW2d 155 (1971), flashlights, *People v Ragland*, 14 Mich App 425, 426-427, 165 NW2d 639 (1968), and lighter fluid, *People v Morgan*, 50 Mich App 288, 292-293; 213 NW2d 276 (1973), “bear a totally different relationship to a person than does a boot.  A boot is an item of wearing apparel and, as such, is more of an extension of, or part of, a person’s body than for example, a broomstick.”).  In short, *Hale* took the basic conclusions from *Buford* and jettisoned the analysis and reasoning.

The through line from *Buford*, which distinguished itself from *Goolsby*, is that apparel, like boots, can be a dangerous weapon, but only when it is used or carried as a weapon, not just when it is used dangerously.  See *Buford*, 69 Mich App at 31-32.  That is to say footwear can be weaponry when it is used as an instrument of armed combat.  See *id*.  Essentially, the nature of the boot combined with its use elevated the conduct from unarmed combat to armed combat.  See *id*.  The same could be said for other types of footwear, like cleats, ice skates, hiking treads, crampons, and stiletto heels in certain circumstances.  It is difficult to say that a rubber soled tennis shoe, let alone a flip flop, is an instrument of offensive combat even when it is covering a foot that is kicking.

But extending the holding of *Buford* and *Hale* opens the door to overreach, particularly as it relates to juveniles.  If a defendant stomps or kicks a victim while wearing pantyhose or stockings, are we prepared to say that person has assaulted with a dangerous weapon?  What if they are wearing a house shoe?  By extension, if a defendant elbows a victim while the defendant is wearing a windbreaker, is the windbreaker now a dangerous weapon?  If someone wearing latex gloves punches a person in the throat, is the latex glove a dangerous weapon simply because it was covering a hand that did grievous harm?  The answer to these questions is obviously no.  Although the district court addressed dangerousness, it did not engage with the question of whether the flip flop and tennis shoe were weapons.

---

[5] “Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value.” *People v DeRousse*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358358); slip op at 4 (quotation marks and citation omitted).

Here, the jury is not responsible for answering these questions. Instead, the question of whether the prosecution's theory of the tennis shoe and flip flop were used as weapons—separate from the issue of their dangerousness—was for the district court to vet when determining probable cause and personal jurisdiction for automatic waiver. If the prosecution can use a flip flop as a jurisdictional hook for automatic waiver, then anytime a juvenile defendant fights another minor while wearing clothes there is a risk they are sacrificing the procedural safeguards that the Legislature explicitly provided for juvenile defendants. See MCL 764.27. This is unacceptable. The district court should have found that it lacked personal jurisdiction. The circuit court should have granted the motion to quash. And we should remand to the family division for further proceedings because the apparel in this case was not used as a weapon.

## C. DEFENDANT WAS NOT ARMED WITH A DANGEROUS WEAPON AS REQUIRED FOR AUTOMATIC WAIVER UNDER MCL 764.1f(2)(b)

Even if we were to accept that a tennis shoe or flip flop is a weapon instead of merely an article of clothing worn during unarmed combat, the circuit court still should have granted the motion to quash because there was no evidence that EO was "armed with a dangerous weapon" during the assault as required under MCL 764.1f(2)(b).

Unlike the other "specified juvenile violations" such as first-degree murder, first-degree arson, and first-degree criminal sexual conduct, that subject a juvenile to automatic waiver purely based on the elements of the charge, assault with a dangerous weapon is only a specified juvenile violation "if the juvenile is armed with a dangerous weapon" when he commits the crime. See MCL 764.1f(2)(b). Here, even if we accept the prosecution's argument that a tennis shoe or flip flop is a dangerous weapon, EO was not armed with the tennis shoe or flip flop during this assault. He was filming it on a camera or cell phone. And while the automatic waiver statute includes conspiracy to commit a "specified juvenile violation," see MCL 764.1f(2)(d), EO was not charged with conspiracy. He was charged with assault with intent to do great bodily harm under an aiding-and-abetting theory. Based on the evidence and the charging document, the district court should never have found probable cause that EO was "armed with a dangerous weapon." A plain reading of the statute leads me to conclude that automatic waiver only applies to juveniles charged with assault with intent to do great bodily harm "if the juvenile is armed with a dangerous weapon." MCL 764.1f(2)(b). The prosecution has never alleged that EO was armed with a dangerous weapon. This is a sufficient basis to grant the motion to quash or alternatively transfer to the family division.

## IV. CONCLUSION

A granular review of the record before us indicates that the alleged conduct was an unarmed attack. The prosecution presented evidence sufficient to establish probable cause of assault with intent to do great bodily harm. The prosecution also presented evidence that one of EO's codefendants used the flip flop he was wearing dangerously, while the other codefendant did the same with a tennis shoe. But it did not present evidence that either used or carried these items as weapons, which is to say as instruments of armed combat. The prosecution also did not present any evidence that EO was ever armed—with a flip flop or with anything else. The district court did not analyze whether the flip flop or tennis shoe was used as a weapon, or if EO was armed during the attack. These errors required the circuit court to grant the motion to quash and transfer

-9-

the case to the family division to proceed as a traditional waiver, if at all.  For these reasons, I respectfully dissent.

/s/ Noah P. Hood